THORESON, by Guardian *ad litem,* Plaintiff and Respondent: *Buchelt,* Plaintiff and Respondent and Cross Appellant, v. MILWAUKEE & SUBURBAN TRANSPORT CORPORATION, Defendant and Appellant and Cross Respondent.

*No. 109. Argued October 2, 1972.—Decided November 9, 1972.*
(Also reported in 201 N. W. 2d 745.)

232

For the appellant there were briefs by *Kivett & Kasdorf,* attorneys, and *Harold A. Dall* and *James R. Gass* of counsel, all of Milwaukee, and oral argument by *Mr. Dall.*

For the respondents there was a brief by *Habush, Gillick, Habush, Davis & Murphy,* attorneys, and *Robert L. Habush* of counsel, all of Milwaukee, and oral argument by *Robert L. Habush.*

HALLOWS, C. J.    Because of the number of errors assigned, they will be stated and discussed *seriatim.*

### 1. *Jury instructions.*

### A. *Right-of-way.*

The transport company claims error in the court's refusal to give an instruction to the effect a statute requires every pedestrian crossing a roadway at any point other than within a marked crosswalk to yield the right-of-way to all vehicles on the roadway.[1]  The court did give the standard instruction Wis J I—Civil 1030 on the transport company's right-of-way. In *Lisowski v. Milwaukee Automobile Mut. Ins. Co.* (1962), 17 Wis. 2d 499, 117 N. W. 2d 666, this court said an autoist may rely on his right of way, but that the reliance has no basis in fact when the autoist sees a child who cannot be held guilty of negligence for yielding the right-of-way. Consequently, the requested instruction on yielding the right-of-way is not applicable to children below seven years of age.[2]  It is argued *Lisowski* is bad law because it vitiates the command of sec. 346.25, Stats., requires an autoist to make an instantaneous determination of the age of the pedestrian darting in front of his car, and denies equal protection of the laws by creating a classification for under seven-year-old children.  Sec. 346.25,

---

[1] "346.25 **Crossing at place other than crosswalk.** Every pedestrian crossing a roadway at any point other than within a marked or unmarked crosswalk shall yield the right of way to all vehicles upon the roadway."

[2] "891.44 **Presumption of lack of contributory negligence for infant minor.** It shall be conclusively presumed that an infant minor who has not reached the age of 7 shall be incapable of being guilty of contributory negligence or of any negligence whatsoever."

Stats., on yielding the right-of-way and sec. 891.44, on presumption of lack of contributory negligence for an infant minor under seven years must be read together, and sec. 891.44 validly carves out for all practical purposes the application of sec. 346.25 to such children. We think *Lisowski* was correctly decided, and it has been followed since it was decided. *See Mack v. Decker* (1964), 24 Wis. 2d 219, 128 N. W. 2d 455. The language in *Kuklinski v. Dibelius* (1954), 267 Wis. 378, 66 N. W. 2d 169, to the contrary was overruled *sub rosa* in *Lisowski.*

### B. *Lookout.*

The transport company argues the evidence created no issue concerning the driver's lookout and therefore the court was in error in giving instructions thereon.[3] The trial court, and we think correctly, considered there was sufficient conflict in the evidence to raise this issue.

### C. *Speed.*

The court gave the reasonable and prudent speed instruction (Wis J I—Civil 1285) and also instructed on fixed limits (Wis J I—Civil 1290). The reasonable and prudent speed instruction is based on sec. 346.57 (2), Stats.,[4] and the transport company argues this instruc-

---

[3] The court gave two lookout instructions: Wis J I—Civil 1055, which requires the operator to keep a safe lookout ahead and about him; and Wis J I—Civil 1070, which relates to a failure to see objects in plain sight.

[4] "346.57 **Speed restrictions. . .**

"(2) REASONABLE AND PRUDENT LIMIT. No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing. The speed of a vehicle shall be so controlled as may be necessary to avoid colliding with any object, person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and using due care."

tion should be given only when the situations stated in sub. (3)[5] of that section exist. These specific situations necessitate reducing speed. The transport company relies on *Greene v. Farmers Mut. Automobile Ins. Co.* (1958), 5 Wis. 2d 551, 93 N. W. 2d 431, but we think this reliance is misplaced. We see no dependent relationship between sub. (2) and sub. (3) of sec. 346.57. Sub. (2) is a general limitation providing for a speed limit not greater than reasonable and prudent speed under existing circumstances. Sub. (3) is specific and requires a lesser speed than the maximum limit of sub. (2) under the conditions therein stated, such as while approaching railroad crossings, curves, hills, and playing school children. While sub. (2) is related to sub. (3), it is not confined to the specific conditions stated in sub. (3), but rather sub. (3) creates a greater duty in respect to speed than sub. (2) does.

It is also claimed the instruction was defective because it implied the child Frank was "on or entering the highway in compliance with legal requirements and using due care." The instruction states the general standard and it is not a condition precedent to its use that the court find as a matter of law that the child was on the highway in compliance with legal requirements and using due care. That the instruction harmed the transport company is not a reasonable inference; if anything, the effect of this instruction was to aid the transport company because it gave the jury the opportunity to exonerate the

---

[5] "346.57 Speed restrictions. . .

"(3) CONDITIONS REQUIRING REDUCED SPEED. The operator of every vehicle shall, consistent with the requirements of sub. (2), drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hillcrest, when traveling upon any narrow or winding roadway, when passing school children, highway construction or maintenance workers or other pedestrians, and when special hazard exists with regard to other traffic or by reason of weather or highway conditions."

transport company's driver because of the action of the child who was legally unable to use due care. *See Crowder v. Milwaukee & Suburban Transport Corp.* (1968), 39 Wis. 2d 499, 159 N. W. 2d 723.

### D. *Absent witness.*

The trial court gave the absent-witness instruction (Wis J I—Civil 410) against the defendant and allowed an argument by plaintiff's counsel on the point. The absent witness was a passenger on the bus but was not listed on the police report. His name and address were made available to the plaintiff about two weeks in advance of trial by the transport company. Apparently the witness was in the courtroom some time during the trial but was not called by the transport company. We think it was error, but not prejudicial on the facts, for the court to give this instruction. The instruction may properly be given when a witness is not called if the witness is material and within the control of the party against whom the instruction is to be given or when it would be more natural for that party to call the witness.

We cannot assume the bus passenger was a material witness; he may or may not have seen the accident. *Ballard v. Lumbermens Mut. Casualty Co.* (1967), 33 Wis. 2d 601, 148 N. W. 2d 65. Further, the witness must be material in the sense of being capable of supplying "information of strong probative value" for the party's case. *Dodge v. Dobson* (1963), 21 Wis. 2d 200, 124 N. W. 2d 97. The instruction should not be given when the witness' testimony would merely have been cumulative. Failure to call the witness must lead to a "reasonable conclusion that the party is unwilling to allow the jury to have the full truth." *Ballard v. Lumbermens Mut. Casualty Co., supra.* No such conclusion can be drawn where other witnesses give the same testimony the absent witness would have given. The transport company

produced two eyewitnesses and the testimony of this passenger witness, if he in fact saw the accident, may well have been only cumulative.

We cannot assume the witness was more available to the transport company than to the other parties. The test of availability involves the question of whether it is more natural for one party to call the witness than the other, as, for example, where the witness is the wife of one of them. *Carr v. Amusement, Inc.* (1970), 47 Wis. 2d 368, 177 N. W. 2d 388. This court has held it is improper to give the absent-witness instruction when the witness is equally available to both parties. *Capello v. Janeczko* (1970), 47 Wis. 2d 76, 176 N. W. 2d 395. A passenger in a bus is not necessarily more available to the driver than any other party; witnesses do not belong to parties. Where a relationship exists between one of the parties and the witness, such as a familial or employer-employee relationship, it may be more natural for one party to call the witness than the other. *See Lubner v. Peerless Ins. Co.* (1963), 19 Wis. 2d 364, 120 N. W. 2d 54; *Coney v. Milwaukee & Suburban Transport Corp.* (1959), 8 Wis. 2d 520, 99 N. W. 2d 713. But where no such relationship or its equivalent exists, no such inference arises. *See Vogt v. S. M. Byrne Construction Co.* (1962), 17 Wis. 2d 96, 115 N. W. 2d 485, 117 N. W. 2d 362. We think, contrary to the view of the trial court, that the giving by the transport company of the list of witnesses was sufficient to make this witness equally available. There is no question raised that the transport company misled the plaintiffs by giving a list of witnesses and not calling all of them.

E. *Rereading the instructions.*

The trial judge has a right to reinstruct the jury at his discretion if requested by the jury. *Olson v. Siordia*

(1964), 25 Wis. 2d 274, 130 N. W. 2d 827. Apparently there was an agreement between counsel and the court that it could reinstruct the jury in their absence. But even in the absence of an agreement, the trial court has no duty to summon counsel in order that it may repeat proper instructions. It is the duty of the attorneys to be "close at hand" while a jury is out if they desire to be present when instructions are repeated. *Behling v. Lohman* (1966), 30 Wis. 2d 519, 141 N. W. 2d 203.

But it is claimed the court went beyond the request of the jury. The court gave all the negligence instructions, including the two on speed and the two on lookout, and it is argued this overemphasized the duties of the bus driver, which had already been overemphasized, and was not responsive to the request of the jury. On motions after verdict, the trial judge stated he received the impression from seeing the jury that it desired to hear all the instructions on negligence, although he did make an inquiry on whether it wanted to hear the additional instructions. While we do not approve the court's inquiring as to additional instructions, we do not think this was reversible error or that the repeating of all negligence instructions overemphasized the duties of the bus driver. This is not a case of "in-person communication," which was disapproved of in *Rowden v. American Family Ins. Co.* (1970), 48 Wis. 2d 25, 179 N. W. 2d 900.

## II. *Loss of future earnings.*

The transport company argues the medical testimony as to future impairment of the earning capacity of the child Frank was speculative and conjectural and no sufficient foundation was laid for the impairment of the earning capacity of a three-year-old child. It is true the three-year-old child had no present earning capacity, but

the argument a child cannot recover for loss of future earnings for that reason was rejected in *Allen v. Bonnar* (1963), 22 Wis. 2d 221, 125 N. W. 2d 570. As we stated in that case the inability to prove a current earning capacity of a three-year-old child would exclude most children from an award for damages. We are not inclined to reverse *Allen v. Bonnar*.

Evidence of loss of future earning capacity of a three-year-old child, of course, is more speculative and imprecise than proof can be of loss to a mature person who has a proved earning capacity. But that fact does not necessarily make the proof which would be speculative as to a mature person also speculative concerning a three-year-old child. Here, there was sufficient legal evidence to a medical certainty that Frank suffered permanent brain damage which so disturbed his behavior that it made him hyperactive and incapable of overcoming distractibility. The testimony of an economist established a measure of damages based on statistics of the average workingman. This proof showed the average workingman would earn $334,215 between the ages of eighteen and sixty-two. Because of the handicap suffered by Frank, the economist reduced his earning capacity by $135,000, which left a probable loss of earning of approximately $200,000. The jury awarded $75,000. The statistical method of the average workingman discounted for the particular handicaps suffered by the child is as precise and scientific a standard as can be used to determine damages for future loss of earnings of a child. It certainly is an equitable standard, and between accepting the standard and ruling the evidence is too speculative, we are inclined to stay with our previous view and approve the standard as not being speculative when the handicaps are supported by proper medical testimony.

### III. *Mother's award for medical expenses.*

Prior to the accident Frank's mother and father were divorced. The divorce decree ordered the father to make support payments for their five children. The record shows the father paid a total of $1,591 in support of the five children from September 26, 1962, to May 8, 1968. No payments were made after May 8th and a warrant was issued for the father's arrest for nonsupport. This accident occurred in November of 1963. Late in the spring of 1968, Frank's custody was transferred from his mother to the Milwaukee county department of public welfare for placement in the Lorenz Institute. Mrs. Buchelt never received any bills for medical treatment of Frank at Lorenz or at the Eau Claire Clinic at which he was treated, nor has she paid any money to the institute or clinic. The record is not clear who paid these expenses, whether the county or the federal government or both. However, the record does show the county of Milwaukee sought to intervene in this case at the trial level.

### A. *Real party in interest.*

The transport company contends Frank's mother is not the real party in interest and the cause of action belongs either to Frank's father or to the governmental unit providing the services. If the expenses were paid under a federal program, the transport company argues only the United States has a right to recover on an independent cause of action under 42 USCA, sec. 2651. *See United States v. Bartholomew* (D. C. Okla. 1967), 266 Fed. Supp. 213; *United States v. Wittrock* (D. C. Pa. 1967), 268 Fed. Supp. 325; *United States v. Greene* (D. C. Ill. 1967), 266 Fed. Supp. 976; *United States v. Guinn*

(D. C. N. J. 1966), 259 Fed. Supp. 771. However, no such argument is made concerning Milwaukee county.

The issue thus presented is whether the father or the mother is the real party in interest to recover. It is quite clear the father has the primary duty to support his children and this duty does not cease merely because in a divorce action the custody is given to the mother, *Schade v. Schade* (1957), 274 Wis. 519, 80 N. W. 2d 416, or because others have assumed that responsibility for him. *State v. Freiberg* (1967), 35 Wis. 2d 480, 151 N. W. 2d 1. However, the mother has the obligation to support her child when the father has failed in whole or in part to do so. In her amended complaint, Mrs. Buchelt alleged that as Frank's mother she was obliged to furnish him with medical care. She testified she was able to feed and clothe her children properly. The testimony relating to the father's support over the eight-year period represents on an average about $1 per week for Frank. We do not think this is substantial enough to sustain the argument the father is the real party in interest. If a father, who has the duty of support, performs that duty, he should not be deprived of recovery because someone else has intervened, but the right to recovery depends not only upon the duty but also upon its substantial fulfillment. This court has looked behind the duty of support to see who actually did provide support for the purpose of awarding a child damages for wrongful death of his mother. *See O'Leary v. Porter* (1969), 42 Wis. 2d 491, 167 N. W. 2d 193. It has been held where a mother actually supports her child, she is entitled to maintain an action for loss of services and expenses incurred as a result of injury to the child. *Southwestern Gas & Electric Co. v. Denney* (Ark. 1935), 82 S. W. 2d 17. We think, on these facts, the mother is the real party in interest.

## B. *Collateral-source rule.*

Since the medical expenses were gratuitous so far as the mother was concerned, it is argued these payments, whether made by the county or federal government, do not come within the collateral-source rule. It is argued the rule is restricted to situations wherein the person recovering has paid a consideration in some form for the collateral benefits. The transport company relies on *Campbell v. Sutliff* (1927), 193 Wis. 370, 214 N. W. 374; but, while in that case this court referred to the payment of insurance premiums as being an investment for benefits, which should not inure to the wrongdoer, the court also intimated the collateral-source rule included a gratuitous payment of salary by an employer to an injured employee.

The general rule in Wisconsin has been that a plaintiff who has been injured by the tortious conduct of another is entitled to recover the reasonable value of his medical costs reasonably required by the injury. In most cases this is the actual expense, but in some cases it is not. But the test is the reasonable value, not the actual charge, and therefore there need be no actual charge. Under this theory of recovery, the fact that necessary medical and nursing services are rendered gratuitously to one who is injured should not preclude the injured party from recovering the value of those services as part of his compensatory damages. The reason for this view is often given that the recovery has a penal effect on a tort-feasor and the tort-feasor should not get the advantage of gratuities from third parties.[6] There are three recurrent situations which raise the question of whether

---

[6] For criticism of this view as being a distortion of logic, *see Unreason In the Law of Damages: The Collateral Source Rule,* 77 Harvard L. Rev. (1964), 741–753.

the plaintiff ought to recover damages for expenses never in fact incurred. In these situations the benefit is different from insurance payments for which there is a premium paid and are more like that of a continued salary. Wisconsin has long held the collateral-source rule applies to damages relating to loss of earnings where the employer has continued to pay wages. *Cunnien v. Superior Iron Works Co.* (1921), 175 Wis. 172, 184 N. W. 767; *Prunty v. Vandenberg* (1950), 257 Wis. 469, 44 N. W. 2d 246; *Ashley v. American Automobile Ins. Co.* (1963), 19 Wis. 2d 17, 119 N. W. 2d 359. Medical expenses paid directly by an insurance company or by Medicare have an investment *quid pro quo* involved. *Campbell v. Sutliff, supra; Merz v. Old Republic Ins. Co.* (1971), 53 Wis. 2d 47, 191 N. W. 2d 876.

The three situations which are somewhat different are: (1) Gratuitously rendered hospital and medical expenses; (2) services rendered gratuitously to a member of an association; and (3) services gratuitously rendered by the plaintiff's wife. In the case of gratuitous services rendered by hospitals or doctors, most courts apply the collateral-source exclusionary rule and have ignored the Restatement, *Torts*, p. 637, sec. 924, comment *f*, that mitigation is permitted where services are rendered by a public charity. An example of the second case is in *McLaughlin v. Chicago, M., St. P. & P. R. R. Co.* (1966), 31 Wis. 2d 378, 143 N. W. 2d 32. There, a Catholic priest, a member of a religious order was injured and taken care of by his religious order. He was allowed to recover the value of his medical expenses. Where the wife gratuitously renders services, the courts generally deny mitigation.

The transport company relies on *Kopp v. Home Mut. Ins. Co.* (1959), 6 Wis. 2d 53, 94 N. W. 2d 224, and *Smith v. United Services Automobile Asso.* (1971), 52 Wis. 2d 672, 190 N. W. 2d 873. In *Kopp* the court was

construing an insurance contract. Its dicta to the effect there may not be recovery if the medical expenses were furnished by "some third-party volunteer without cost or personal liability to pay therefor on the part of such injured person" must be read in connection with the coverage language in the insurance policy. In *Smith,* although following the *Kopp* rule, the court held the insurer could not avoid its liability when the Navy took care of the plaintiff and the Navy hospital was entitled to recover from the patient the costs of the services rendered. Such services may be said not to be strictly gratuitous, but again in *Smith* the court was construing the coverage language of an insurance policy and not applying the collateral-source rule as such.

We hold the collateral-source rule is not limited to paid-for benefits but applies to gratuitous medical services provided or paid for by the state. This view is not without authority. *See* 22 Am. Jur. 2d, *Damages,* p. 288, sec. 207; Annot. (1959), 68 A. L. R. 2d 876; *Dahlin v. Kron* (1950), 232 Minn. 312, 45 N. W. 2d 833.

### IV. *Cross appeal.*

#### *Parental immunity as a bar to contribution.*

Mrs. Buchelt argues her alleged negligence comes within the exception of *Goller v. White* (1963), 20 Wis. 2d 402, 122 N. W. 2d 193, wherein this court abrogated the doctrine of parental immunity. In that case two exceptions were made:

"(1) Where the alleged negligent act involves an exercise of parental authority over the child; and (2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care."

The mother argues her negligence consisted of failing to educate her child not to go out of the house and onto a busy street. The transport company contends her negligence was in failing to properly supervise her child. Thus these parties make a distinction between education and supervision in respect to "other care" in the exception; we think this distinction is overemphasized.

Frank's mother went to a neighbor's home to return a frying pan, leaving Frank in the living room watching television. She knew Frank wanted to go outside and that on at least two other occasions in her absence he had run out of the house and gone to a neighbor's.

In *Lemmen v. Servais* (1968), 39 Wis. 2d 75, 158 N. W. 2d 341, this court held the failure to properly instruct a six-year-old child as to safety procedures in leaving a school bus and crossing a highway fell within the "exercise of ordinary parental discretion with respect to other care of their child." This court emphasized the exceptions were limited to "transactions which are essentially parental." In *Cole v. Sears, Roebuck & Co.* (1970), 47 Wis. 2d 629, 177 N. W. 2d 866, this court stressed the parental immunity was not determined by whether the negligence arose out of an "essentially parental" act. Although the act must be parental in nature, "it must also constitute an exercise of discretion with 'respect to the provision of food, clothing, housing, medical and dental services, and other care.'" The *Cole Case* involved an injury to a two-year-old child. The parental negligence consisted in allowing him to play on a swing set and failing to provide proper supervision. The court held this negligence did not fall within the *Goller* exception and thus the parents were subject to liability.

In deciding *Goller*, the first exception to the abolishment of immunity involved the exercise of parental authority over the child. This exception embraces the area of discipline. The second exception involved the parents' duty to provide food, clothing, housing, medical and

dental services and other care. In this area, parents are allowed discretion in performing their legal duties. We think the rationale in *Cole* is correct that the rule of *ejusdem generis* should be applied in interpreting the words "other care" and that the exception does not extend to the ordinary acts of upbringing, whether in the nature of supervision or education, which are not of the same legal nature as providing food, clothing, housing, medical and dental services. The care sought in the exclusion is not the broad care one gives to a child in day-to-day affairs. If this were meant, the exclusion would be as broad as the old immunity was. The exclusion is limited to legal obligations, and a parent who is negligent in other matters cannot claim immunity simply because he is a parent.

*By the Court.*—Judgment affirmed.