**James L. BELL, Individually, and as father and natural guardian of John Alan Bell, a minor, Plaintiffs,**

v.

**Paul J. SCHWARTZ, Individually and doing business as Essex Square Apartments, and Nellie Rohe, Defendants and Third-Party Plaintiffs,**

v.

**Douglas WANDS et al., Third-Party Defendants.**

**No. 4–75 Civ. 424.**

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 8, 1976.

John C. Hart, Robins, Davis & Lyons, Minneapolis, Minn., for plaintiff James L. Bell and third-party defendant Mrs. James L. Bell.

Richard Dolezal, Jardine, Logan & O'Brien, St. Paul, Minn., for defendants and third-party plaintiffs.

### MEMORANDUM ORDER

DONALD D. ALSOP, District Judge.

This diversity case is presently before the court upon the motions of plaintiff, James Bell, and third-party defendant, Linda Bell (Mrs. James L.), for summary judgment in connection with a counterclaim and a third-party claim against them.

James Bell brought this action on his own behalf and on behalf of his 10-year-old son, John Alan Bell, for personal injuries and medical expenses incurred when Alan sustained sulphuric acid burns while playing near a trash container on the premises of the Essex Square Apartments on August 8, 1973. The Bells were residing at the apartment complex at the time these injuries occurred.

While there may be some dispute as to the exact manner in which Alan Bell sustained his injuries, for the purpose of this motion it is agreed that either Richard Wands, a third-party defendant, or Alan Bell removed a one-gallon container of sulphuric acid from the large trash container and that Richard Wands either threw the container at or to the Bell boy. The container of sulphuric acid that splashed upon Alan was one of twelve which the resident manager of the apartment complex, Nellie Rohe, had deposited in the trash container earlier. Plaintiff's claim against the owner Paul Schwartz and the resident manager is based upon the defendants' alleged creation of an unreasonably dangerous condition.

Defendants filed third-party actions against Richard Wands, his parents, and Linda Bell, as well as a counterclaim against James Bell. The counterclaim against plaintiff and the third-party claim against his wife allege negligence on their part. The sole basis for defendant's claim of negligence on the part of Alan Bell's parents is their alleged failure to supervise, instruct, and control their son, Alan Bell.

Mr. and Mrs. Bell now move for summary judgment pursuant to Rule 56, Fed.R. Civ.P., contending that the counterclaim and third-party action against them are barred by the doctrine of parent-child immunity. Although material facts remain in dispute, the court assumes, for the purpose of this motion, that the Bells were negligent in the supervision of their son. The court must then decide whether, as a matter of law, Mr. and Mrs. Bell are immune from liability under such circumstances.

Because this is a diversity action, Minnesota law controls. *Erie Railroad Co. v.*

*Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Minnesota Supreme Court, in *Silesky v. Kilman,* 281 Minn. 431, 161 N.W.2d 631 (1968), abrogated the doctrine of parent-child immunity except in two particular situations:

(1) [W]here the alleged negligent act involves an exercise of reasonable parental authority over the child; and

(2) [W]here the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care . . . .

*Id.* at 439, 161 N.W.2d at 638.

This court is unable to determine from the language of *Silesky* whether or not negligent parental supervision is an "exercise of reasonable parental authority" or "an exercise of ordinary parental discretion with respect to the provision of . . . housing . . . [or] other care." The Minnesota Supreme Court apparently has not addressed the precise issue now before the court, whether parents are liable to their children for the injuries resulting from negligent supervision. Therefore, this court must predict what the decision of the Minnesota Supreme Court will be when faced with this issue.

Without a Minnesota decision on point, defendants suggest that decisions of the Wisconsin Supreme Court are secondary authority as to what the law in Minnesota is or should be with respect to this issue. When the Minnesota Supreme Court abrogated the parent-child immunity doctrine in *Silesky,* it was apparently strongly influenced by the decision of the Wisconsin Supreme Court which previously had abrogated the doctrine. Indeed, the Minnesota Court adopted the identical language of *Goller v. White,* 20 Wis.2d 402, 122 N.W.2d 193 (1963), in defining the two situations in which the doctrine still applies. Thus, the defendants argue that two Wisconsin decisions interpreting the identical language and determining the precise issue presently before the court are strong evidence as to how the Minnesota Supreme Court would decide this issue.

In *Cole v. Sears Roebuck & Co.*, 47 Wis.2d 629, 177 N.W.2d 866 (1970), the Wisconsin Court concluded that supervision of a child's play does not involve "an exercise of ordinary *parental discretion* with respect to the provision of food, clothing, housing, medical and dental services and other care." This holding was reaffirmed in *Thoreson v. Milwaukee & Suburban Transport Co.*, 56 Wis.2d 231, 201 N.W.2d 745 (1972), which also held that the *"parental authority"* exception embraces only the area of discipline and thus does not extend to negligent parental supervision.

Plaintiff and third-party defendant Bell contend, however, that the recent Michigan decision of *Paige v. Bing Construction Co.*, 61 Mich.App. 480, 233 N.W.2d 46 (1975), is also strong secondary authority as to what Minnesota law is or should be. The doctrine of parent-child immunity was abrogated by the Michigan Supreme Court in *Plumley v. Kelin*, 388 Mich. 1, 199 N.W.2d 169 (1972), where the Court also adopted the two identical exceptions established by the Wisconsin Court in *Goller* and the Minnesota Court in *Silesky*. Thus, all three jurisdictions, Wisconsin, Minnesota, and Michigan, have adopted the same rule with respect to parent-child immunity. However, the Courts in Michigan and Wisconsin have interpreted their rule differently. The Michigan Court in *Paige* expressly rejected the conclusion of the Wisconsin Court that the parent-child immunity doctrine did not extend to negligent parental supervision and concluded that the first exception to the abrogation of parental immunity, the "parental authority" exception, does apply so as to bar a claim of negligent parental supervision.

This court finds the reasoning of *Paige* persuasive. As the Court in *Paige* noted:

A parent's exercise of authority over his or her child involves more than discipline. It includes the providing of instruction and education so that a child may be aware of dangers to his or her well being. We find it impossible to separate such general phenomena as authority and supervision. In order to adequately supervise a child, every parent knows that some amount of discipline is inextricably involved. The right to exercise authority over a child certainly includes the responsibility to supervise that child's behavior. *Paige v. Bing Construction Co.*, 61 Mich. App. at 486, 233 N.W.2d at 48–49 (1975).

This court concludes that the Minnesota Supreme Court would rule that the "parental authority" exception to the abrogation of parent-child immunity extends to negligent parental supervision. Thus the motion of plaintiff James Bell and third-party defendant Linda Bell for summary judgment with respect to the counterclaim and the third-party claim against them will be granted.

The court appreciates the assistance of both counsel in the form of well-reasoned briefs and candid oral arguments.

Upon the foregoing,

IT IS ORDERED That the counterclaim against James Bell and the third-party claim against Linda Bell be dismissed.