158 N.J. Super. 442 (1978)
386 A.2d 442
JEFFREY GROSS, AN INFANT BY HIS GUARDIAN AD LITEM, SUZANNE GROSS, AND SUZANNE GROSS, PLAINTIFFS-APPELLANTS,
v.
SEARS, ROEBUCK & COMPANY, AND STEPHEN GROSS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 4, 1978.
Decided April 20, 1978.
*443 Before Judges HALPERN, LARNER and KING.
Mr. Douglas C. Greenfield argued the cause for appellants (Mr. Stanley W. Greenfield and Mr. Douglas C. Greenfield, attorneys).
Mr. Paul E. Anderson argued the cause for respondent Stephen Gross (Messrs. Kovacs, Anderson, Horowitz & Rader, attorneys).
*444 Mr. Guy H. Haskins argued the cause for Sears, Roebuck & Company (Messrs. Haskins, Robottom & Hack, attorneys).
The opinion of the court was delivered by HALPERN, P.J.A.D.
This appeal involves an undecided aspect in intra-family tort actions. The principal issue presented is whether an unemancipated 10-year-old child may maintain an action against his father based on the latter's alleged negligence in operating a power lawnmower on his property which resulted in injury to the child. If the principal issue is answered in the affirmative, we are then faced with the issue of whether the injury sustained by the child occurred as a result of the negligent exercise of parental authority or supervision over his child so as to be an exception to the abrogated rule of parental immunity.
The suit by the infant, through his mother as guardian ad litem, and the mother individually (plaintiffs), against the father and Sears, Roebuck & Company (the distributor of the lawnmower) was dismissed on summary judgment as to the father only on the basis of parental immunity. We granted plaintiffs leave to appeal and now reverse.

Interspousal, Familial and Parental Immunity
Briefly stated, the philosophy behind the immunity rule was to prevent suits which could threaten family bliss and concord, or subvert parental discipline in the case of children. In later years an added reason to retain immunity emerged. It was feared that abolition of immunity would lead to fraudulent and collusive litigation against insurance carriers. This latter reason has been universally rejected. See Immer v. Risko, 56 N.J. 482 (1970), and cases cited therein. Therefore, we will not discuss that phase of the problem.
We have come a long way since the decision in Hastings v. Hastings, 33 N.J. 247 (1960) in which the court, by a 4-3 decision, reviewed the doctrine of parental immunity *445 in suits by unemancipated minors against their parents in auto negligence cases, and refused to overrule the doctrine. This despite the strong urging and cogent reasons advanced by the minority that the time had come for a change in this so-called common law immunity doctrine. Thereafter, inroads were made in the immunity rule, and the philosophy expressed by the minority in Hastings is today the law in New Jersey. Immer, supra (wife permitted to sue husband for auto tort); France v. A.P.A. Transport Corp., 56 N.J. 500 (1970) (unemancipated child permitted to sue parent for auto tort although the court carefully limited its decision to auto cases). In an extensive and enlightened review of the entire subject Justice Jacobs abolished interspousal and parental immunity in cases of intentional wrongdoing by permitting the husband to be sued for the alleged intentional drowning of his wife. Small v. Rockfeld, 66 N.J. 231 (1974). The parental immunity was further limited in a case where an unemancipated child was permitted to sue its parent under an existing statute (N.J.S.A. 4:19-16) for injuries sustained resulting from being bitten by his parents' dog. Dower v. Goldstein, 143 N.J. Super. 418 (App. Div. 1976). So, too, a parent may now maintain a suit for injuries sustained in an auto accident where his unemancipated child was the driver. Guterman v. Guterman, 66 N.J. 69 (1974).
We recognize that in France, supra, the court abandoned the doctrine of parental and interspousal immunity in auto negligence cases and refrained from dealing with other types of tort. However, one cannot read France and Small and conclude otherwise than that the parental immunity doctrine has been abrogated in New Jersey in all tort cases, except for some limited exceptions hereinafter to be discussed. The Small, France and Immer decisions, in announcing the new rules on the subject of interspousal, familial and parental immunity, not only reevaluated the principles of justice involved, but relied on practical considerations of current economic and social realities, and the *446 effect the new rules would have upon the law, the public, the family and insurance companies. We can see no substantial difference between permitting an unemancipated child to sue his parent for injuries resulting from the parent's negligence in driving a car, and permitting him to sue the parent for the negligent operation of a power mower. A contrary view would simply be myopic and unrealistic.

Do the Facts Here Come Within Any Exception to the Rule Permitting Child-Parent Suits?
We think not. The exceptions to the rule were discussed and enunciated in Small, supra, thusly:
In Goller v. White, supra [20 Wis.2d 402, 122 N.W.2d 193] the Wisconsin Supreme Court abrogated the parental immunity in an opinion which declared that only in the following exceptional situations may it still be asserted as a defense: "(1) Where the alleged negligent act involves an exercise of parental authority over the child; and (2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." 122 N.W. 2d at 198. In Silesky v. Kelman, supra [281 Minn. 431, 161 N.W.2d 631] the Minnesota Supreme Court explicitly approved these limited exceptions from its abrogation of parental immunity. 161 N.W.2d at 638. In Gibson v. Gibson, supra [3 Cal.3d 914, 92 Cal. Rptr. 288, 479 P.2d 648] the California Supreme Court held broadly that an unemancipated minor child may maintain an action for negligence against his parent. In his opinion for the court, Justice Sullivan dealt with and summarily rejected the arguments advanced in favor of parental immunity. He concluded that the immunity should be abrogated though he recognized that the parent would still not be liable for conduct which amounted to no more than what "an ordinarily reasonable and prudent parent" would have done in similar circumstances. 92 Cal. Rptr. at 293, 479 P.2d at 653. See Note, "The Vestiges of Child-parent Tort Immunity," 6 U. Cal. Davis L. Rev. 195 (1973); see also Comments, 38 Albany L. Rev. 407 (1974); 25 U. Fla. L. Rev. 794 (1973); 4 St. Mary's L.J. 48 (1972); 8 Houston L. Rev. 183 (1970); 1967 U. Ill. L.F. 805.
In France v. A.P.A. Transport Corp., 56 N.J. 500 (1970), this Court, again speaking through Justice Proctor, overruled Hastings (33 N.J. 247) and accepted the arguments in favor of abrogation of parental immunity. He noted that originally the immunity had *447 been based on the preservation of "family harmony" whereas the recent emphasis had been on the danger of "collusion and fraud." In rejecting these bases he reiterated what he had said in Immer (56 N.J. 482) and embraced the dissenting views in Hastings (33 N.J. at 253-261). See also Heyman v. Gordon, supra, 40 N.J. at 55-60 (dissenting opinion); Franco v. Davis, 51 N.J. 237, 242-243 (1968) (dissenting opinion). He concluded his opinion with the following:
"After a review of the arguments for and against the parent-child immunity doctrine, we are of the opinion that it should be abrogated in this State. Reingold v. Reingold, supra [115 N.J.L. 532] Hastings v. Hastings, supra, and the cases which follow them are overruled. Our decision today goes no further than allowing suits between unemancipated children and their parents for injuries suffered as a result of the negligent operation of a motor vehicle. See dissenting opinion of Justice Jacobs in Hastings v. Hastings, supra. We realize that there may be areas involving the exercise of parental authority and care over a child which should not be justiciable in a court of law, See Goller v. White, supra, Silesky v. Kelman, supra. But we are not confronted with such a situation in this case and we will not speculate on what limits, if any, the rule enunciated here should have . . 56 N.J. at 506-507."
See Guterman v. Guterman, 66 N.J. 69 (1974). [66 N.J. at 243-244]
No court in this State has ever been called upon to decide whether any of the suggested exceptions applied to any given set of facts. We have considered the issue and have concluded that exceptions to the rule should be strictly limited to instances where it clearly appears that the alleged negligent act involves the exercise of parental authority over the child or where the alleged negligent parental act relates "to the provision of food, clothing, housing, medical and dental services, and other care * * *" Small, supra at 243.
We are not insensitive to the fact that the determination of that issue may often be difficult to resolve. However, we have no hesitancy in holding that the facts here do not come within any exception to the rule abrogating parental immunity. The essence of the alleged negligence herein arises out of the affirmative act of the parent in mowing the lawn. Whether or not this act was accompanied by a warning *448 to his child to "go away", the cause of action does not constitute one arising out of the exercise of "parental authority" so as to warrant the application of the immunity doctrine. We consider our decision today to be no more than an extension of the philosophy charted by the Supreme Court.
Finally, since we are confronted with a novel issue, for future guidance of trial judges and the bar we suggest that the issue of whether an exception to the new rule applies is a threshold question to be decided by the trial judge and not the jury. See Clifford v. Opdyke, 156 N.J. Super. 208 (App. Div. 1978); Fitzgerald v. Wright, 155 N.J. Super. 494 (App. Div. 1978). The burden of proof would be upon the parent to show that he comes within one of the exceptions in order to sustain his defense of immunity.
Reversed and remanded for a plenary hearing on the issues of negligence, contributory negligence, damages and the remaining unresolved issues.