John G. ROMANIK, a minor, by Bernard J. Bringle, guardian ad litem, Respondent.

v.

TORO COMPANY and Gerald J. Romanik, Appellants.

Nos. 48327, 48331.

Supreme Court of Minnesota.

March 30, 1979.

Alex B. Leibel and Michael R. Peterson, Minneapolis, for Toro Co.

Jardine, Logan & O'Brien and Mark A. Fonken, St. Paul, for Romanik.

Jon R. Duckstad, St. Paul, for respondent.

Heard before ROGOSHESKE, YETKA, and WAHL, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

These appeals arise out of an action for damages for injuries to his right hand sustained by plaintiff John G. Romanik, age 13, while operating his father's Toro snowthrower. Following the trial court's approval of the jury's special verdict for plaintiff, defendant Toro Company (Toro) and defendant Gerald J. Romanik,[1] father of plaintiff, filed separate appeals from an order denying their respective post-trial alternative motions and from the judgment entered against them. The principal issues raised are whether the jury's findings are adequately supported by the evidence and whether the parent-child tort immunity doctrine precludes plaintiff from suing his father. We hold that the jury's special verdict has adequate evidentiary support and that the father is not immune from suit on the facts of this case. Therefore, we affirm.

On January 26, 1975, about 1 o'clock in the afternoon, plaintiff injured his right hand while operating his father's Toro snowthrower on a neighbor's driveway—at the request of the neighbor and with his father's permission. The injury occurred when plaintiff attempted to depress an auger clutch lever located close to a partially unshielded pulley and drive belt and his right hand suddenly became caught in the rotating pulley and drive belt. His father, Gerald J. Romanik, had approved of his son's operating the auger clutch lever by hand. As a result of this accident, three-quarters of an inch of plaintiff's ring finger had to be amputated. In addition, plaintiff incurred six fractures, severe cuts, an enlarged middle joint on the right middle finger, limitation of motion, decreased ability to grip, cold intolerance, increased susceptibility to burns, and loss of circulation in three fingers. Dr. Bror Troedsson and Dr. Charles McDonald estimated plaintiff's degree of permanent partial disability to be 35 percent and 13 percent, respectively.

By its special verdict, the jury awarded plaintiff $28,000 in damages, finding Toro 85 percent and plaintiff's father 15 percent causally negligent. Toro was also found strictly liable in tort for selling a product in a defective condition unreasonably dangerous to users.

### Toro's Appeal

Toro argues that the jury's findings of negligence and strict liability are without foundation and should be set aside, because the two engineering experts testified that it would have been physically impossible for the accident to have occurred in the way plaintiff testified. On a careful reading of the entire transcript, we hold that the verdict in favor of plaintiff is adequately supported by the evidence. The snowthrower mechanism included a rotating pulley and drive belt which were only partially guarded by a fender-like piece of metal. Plaintiff's injury occurred when his right cotton glove became caught between the pulley and drive belt, pulling his hand into the assembly. The pulley and drive belt were located on the western side of the snowthrower (assuming the front to be pointing north) and rotated in a counterclockwise direction. Plaintiff testified that as he reached for the clutch lever, his hand always remained on the south side of the pulley. Toro's expert, however, testified that plaintiff could have injured his hand only if he had placed it north of the pulley, due to the pulley's counterclockwise movement. Toro, therefore, argues that it would have been physically impossible for the accident to have occurred as plaintiff described it.

Toro, however, misconstrues the testimony of plaintiff's engineering expert, Mr. Peterson, and ignores other critical testimo-

1. The status of Gerald J. Romanik, the father, was changed at trial from a third party defendant to a direct defendant.

ny. Toro's counsel asked Mr. Peterson a hypothetical question based on testimony elicited from plaintiff on cross-examination that plaintiff's hand was on the clutch lever 2 inches from the pulley/drive belt assembly at the time of the accident. Mr. Peterson answered that, to a reasonable engineering certainty, the accident could not have occurred if plaintiff had *continuously* kept his hand 2 inches from the pulley/drive belt. Toro ignores Mr. Peterson's testimony that plaintiff's hand could have been caught in the pulley/drive belt assembly on the south side of the pulley, simply because the pulley was unguarded and a loose finger on a glove could have caught between the belt and the pulley and pulled the hand into the pulley/drive belt mechanism. Furthermore, plaintiff related that he was not certain whether his hand had even reached the clutch lever before his glove and hand were pulled into the pulley and that the incident happened "real fast." Plaintiff gave his estimate that his hand was 2 inches from the pulley, only upon being prodded on cross-examination by Toro's counsel to demonstrate precisely where his hand was at the time of the accident. Plaintiff was only 13 years old when this very traumatic accident occurred, some 2½ years before trial. Where the entire incident happened so rapidly, the jury was justified in believing that plaintiff had no precise recollection of the location of his hand immediately before the accident.

 Since the jury heard the testimony and viewed the demonstrations dealing with the snowthrower, its verdict must be sustained unless the evidence is conclusive against the verdict. *Busch v. Busch Const., Inc.*, 262 N.W.2d 377 (Minn.1977); *Trovatten v. Hanson*, 171 Minn. 130, 213 N.W. 536 (1927). Conflicts in expert testimony are to be resolved by the jury. *Gardner v. Coca-Cola Bottling Co.*, 267 Minn. 505, 510, 127 N.W.2d 557, 561 (1964). The jury was justified in crediting the testimony of plaintiff and Mr. Peterson as to how the accident occurred. Its findings support Toro's liability and should not be disturbed.

 Toro's additional contention that plaintiff was negligent as a matter of law is without merit. The jury's special finding that plaintiff was not negligent is adequately sustained by the evidence. A child is not held to the standard of care of an adult. See, e. g., *Aldes v. St. Paul Ball Club, Inc.*, 251 Minn. 440, 88 N.W.2d 94 (1958). None of plaintiff's acts appear clearly unreasonable under the circumstances, given his father's permission to operate the auger clutch lever by hand.

 Toro also argues that the $28,000 verdict awarded to plaintiff was excessive. Taking into consideration the severe and permanent injuries suffered by plaintiff to his right hand, we hold that the trial court did not abuse its discretion in ruling that the award of damages was not excessive. See, *Stenzel v. Bach*, 295 Minn. 257, 261, 203 N.W.2d 819, 822 (1973).

Finally, Toro's argument that the order denying Gerald Romanik's motion for judgment notwithstanding the verdict or for indemnity against Toro is not appealable is without merit. Upon an appeal from the judgment, Rule 103.04(2), Rules of Civil Appellate Procedure, permits this court to "review *any* order involving the merits or affecting the judgment." (Italics supplied.)

### Father's Appeal

The sole issue raised by the father's appeal is his contention that the parent-child tort immunity doctrine is applicable in this case.

 This court has abrogated the parent-child tort immunity doctrine, with two exceptions:

" * * * (1) Where the alleged negligent act involves an exercise of reasonable parental authority over the child; and (2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care * * *."

*Silesky v. Kelman*, 281 Minn. 431, 442, 161 N.W.2d 631, 638 (1968); see, *Balts v. Balts*, 273 Minn. 419, 142 N.W.2d 66 (1966). The

second exception does not apply in this case, because none of the specific types of care enumerated is involved here, and the term "other care" should, we believe, be construed to apply to items similar to those enumerated. *Cole v. Sears Roebuck & Co.*, 47 Wis.2d 629, 177 N.W.2d 866 (1970).

It appears, therefore, that whether the father is immune from tort liability depends on how broadly the first exception is construed. This is a matter of first impression in Minnesota. Wisconsin and Michigan, which both recognize the identical two exceptions that we recognize,[2] have construed the "parental authority" exception differently.

The Michigan Court of Appeals, in *Paige v. Bing Const. Co.*, 61 Mich.App. 480, 233 N.W.2d 46 (1975), held that a construction company could not recover contribution from the parents of a child for negligent supervision where a 2½-year-old child died as the result of a fall into a man-made hole on a construction site. The court concluded that the parents were immune from suit, because of the "parental authority" exception. The court construed this exception, stating:

"A parent's exercise of authority over his or her child involves more than discipline. It includes the providing of instruction and education so that a child may be aware of dangers to his or her well being. We find it impossible to separate such general phenomena as authority and supervision. In order to adequately supervise a child, every parent knows that some amount of discipline is inex-

tricably involved. The right to exercise authority over a child certainly includes the responsibility to supervise that child's behavior." 61 Mich.App. 486, 233 N.W.2d 48.[3]

The Supreme Court of Wisconsin, in *Thoreson v. Milwaukee & Suburban Transport Co.*, 56 Wis.2d 231, 201 N.W.2d 745 (1972), held that a mother was not immune from tort liability where she was found to have negligently supervised or educated her 3-year-old child. Her child was injured by a bus when he ran into the street from between parked cars. The court construed the "parental authority" exception to embrace only the area of discipline and, therefore, not to extend to negligent supervision.[4]

We find it unnecessary to adopt either construction to affirm the trial court's refusal to grant immunity to the father. The jury's finding concerning the father's causal negligence included its affirmative answer to this question: "Was Gerald Romanik negligent in warning John Romanik of any dangers or defects as to the use of the Toro Snow Hound?" The record permits interpreting this finding to encompass either a finding of (1) negligence in failing to adequately warn his son of the dangers in the use or defects inherent in the snowthrower—in short, negligent supervision, or (2) negligence in instructing his son that it was acceptable to operate the clutch lever by hand, contrary to the specific instructions contained in the operator's manual that it should be operated "by pushing the lever down with the foot," or both.[5] A

---

2. In *Silesky v. Kelman*, 281 Minn. 431, 161 N.W.2d 631 (1968), this court adopted these two exceptions from the Wisconsin case of *Goller v. White*, 20 Wis.2d 402, 122 N.W.2d 193 (1963).

3. See, *Bell v. Schwartz*, 422 F.Supp. 257 (D.Minn.1976) (diversity action where the court concluded that "the Minnesota Supreme Court would rule that the 'parental authority' exception to the abrogation of parent-child immunity extends to negligent parental supervision." 422 F.Supp. 259.

4. See, also, *Howes v. Hansen*, 56 Wis.2d 247, 201 N.W.2d 825 (1972); but, see, *Lemmen v. Servais*, 39 Wis.2d 75, 158 N.W.2d 341 (1968).

5. The Owner's Manual (defendant's exhibit A) contained the following provisions:

"This Snowhound is engineered and tested to offer reasonably safe and effective service, provided it is operated in strict accordance with these instructions. FAILURE TO DO SO MAY RESULT IN PERSONAL INJURY."

"Never allow children to operate a snowthrower or adults to operate it without proper instruction."

"Stay in your safety zone behind handles. Never leave this position without shutting engine down."

"Never place hands or feet under or into rotating parts or concealed areas. Keep hands and feet clearly away from auger,

# 520

fair reading of the relevant testimony persuades us that the jury's finding of negligence was more likely based on the father's instructions to operate the clutch lever contrary to the operator's manual than on the broader finding of negligent supervision. The father testified that he specifically instructed his son in the use of the snow-thrower and told him before the accident that it was acceptable to operate the clutch lever by hand, despite his testimony that he read and understood the instructions in the manual that it was to be operated with the foot. Also, the evidence is undisputed that before the accident the son had observed the father and the father had observed his son so operate the lever. A parent who entrusts a potentially dangerous piece of machinery to a child and negligently instructs him to operate it contrary to the operator's manual cannot characterize his misconduct as negligent supervision. At the very least, it is an affirmative act of negligence involving a foreseeable, unreasonable risk of injury to a child. The policy favoring immunity for a parent's exercise of ordinary discipline and authority over a child cannot justifiably be extended to the facts peculiar to this case. Thus, we leave our construction of the scope of the parental-authority exception to a case where liability is based on a clear finding of negligent supervision. Accordingly, we hold the immunity exceptions inapplicable to bar suit against the father.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.

belts, pulleys, gears, etc., while engine is running."
"Study the safety instructions thoroughly to insure proper functioning and to prevent injury to yourself and others."
"WARNING: All body movements necessary to start, stop and run this machine should be done from the normal operating position. This is a position of maximum safety. If it is necessary to leave this position, shut engine off by pulling throttle lever to the 'STOP' position and place all other controls in the disengaged or neutral position."
"Disengage auger clutch by pushing lever down with foot, then moving lever inward and up against bottom of bracket."
"To stop the engine, pull throttle control lever to the 'STOP' position and place all controls in disengaged or neutral position."