181 N.J. Super. 283 (1981)
437 A.2d 338
NAYETTE CAREY, AN INFANT BY HER G/A/L GEORGE CAREY, AND GEORGE CAREY, INDIVIDUALLY, PLAINTIFFS,
v.
RAYMOND DAVISON, DEFENDANT.
Superior Court of New Jersey, Law Division Essex Co.
Decided October 13, 1981.
*284 David J. Ortopan for plaintiffs (Freeman & Bass, attorneys).
Clark L. McFadden for defendant (Gorrin, Ironson & Whitken, attorneys).
NEWMAN, J.S.C.
This a personal injury action which was instituted on behalf of the infant plaintiff after she was struck by an automobile operated by defendant while crossing the street. Defendant subsequently filed a counterclaim for contribution and/or indemnification against plaintiff George Carey, the infant's father. The counterclaim alleged improper supervision, control and/or management of the actions of the infant plaintiff. The matter before the court is plaintiffs' motion to dismiss the counterclaim for failure to state a claim upon which relief can be granted.
The following facts have been conceded for purpose of this motion. Plaintiff Nayette Carey, an infant, was standing at the curb of a street, holding her father's hand, waiting to cross. *285 Her father, also named as plaintiff, released her hand after observing traffic in the roadway, and told her to cross the street. Nayette did so, and was struck by a vehicle driven by defendant Raymond Davison, sustaining severe personal injuries. According to plaintiff's certification filed in support of this motion, plaintiff's father has no insurance which would afford coverage for a claim made against him based upon negligent supervision of his child.
At issue is whether the parent-child immunity doctrine as it currently exists in the law of New Jersey bars the counterclaim against the infant plaintiff's father. A review of recent New Jersey law reveals that there has been an inexorable erosion of parent-child immunity in a number of decisions which abrogated the immunity in the narrow circumstances presented in each case. A review of the significant cases would be in order.
In France v. A.P.A. Transport Corp., 56 N.J. 500 (1970), the Supreme Court, in a 4-3 decision, established that the doctrine would no longer be viable in cases involving automobile negligence. The holding was limited to exactly those facts, the court noting that "We realize that there may be areas involving the exercise of parental authority and care over a child which should not be justiciable in a court of law." (At 507).
Small v. Rockfeld, 66 N.J. 231 (1974) a 4-2 decision, eliminated immunity in situations involving willful, malicious and intentional torts. In the case of Dower v. Goldstein, 143 N.J. Super. 418 (App.Div. 1976), the Appellate Division was presented with a situation in which a child was bitten by his parents' dog. The court held that the immunity would no longer apply in cases where liability was mandated by statute.
France v. A.P.A. Transport Corp., supra, remains the sole case in which the New Jersey Supreme Court has dealt with the doctrine in the context of parental negligence. Reported decisions of the lower courts since 1970 are Fritz v. Anderson, 148 N.J. Super. 68 (Law Div. 1977); Gross v. Sears Roebuck & Co., 158 N.J. Super. 442 (App.Div. 1978), and Convery v. Maczka, 163 N.J. Super. 411 (Law Div. 1978).
*286 In Fritz v. Anderson, supra, the Law Division refused to allow a defendant to join parents in a suit by a minor child who was injured when he fell into an excavation site. Joinder was not allowed because at that time France v. A.P.A. Transport Corp., supra, was the law in New Jersey regarding actions for negligence between parent and child, and the immunity doctrine had only been abrogated in situations where the parent had negligently operated an automobile. The court observed: "The viability of defendant's counterclaim depends upon the ability of the court to extend the abrogation of the parent-child immunity doctrine, beyond the limits established by the Supreme Court in France ..." Id. at 70.
Subsequent to Fritz the Appellate Division decided Gross v. Sears Roebuck & Co., supra. Gross was a case in which a direct action between a child and his parent was allowed where the father was operating a power lawn mower and the child was injured. Judge Halpern noted that no New Jersey court had applied the exceptions to the abrogation of parent-child immunity recognized by France v. A.P.A. Transport Corp. to the facts of a specific case, and concluded:
We have considered the issue and have concluded that exceptions to the rule should be strictly limited to instances where it clearly appears that the alleged negligent act involves the exercise of parental authority over the child, or where the alleged negligent parental act relates to "the provision of food, clothing, housing, medical and dental services and other care...." Id. at 477 citations omitted.
The Gross court found that the alleged negligence in that case arose out of the affirmative act of the parent in mowing the lawn. The court noted that "We can see no substantial difference between permitting an unemancipated child to sue his parents for injuries resulting from the parents negligence in driving a car, and permitting him to sue the parent for the negligent operation of a power mower." Id. at 466. It noted that this act did not constitute one arising out of the exercise of parental authority, so as to invoke the immunity doctrine, and it considered its decision as no more than an extension of the philosophy put forth in France v. A.P.A. Transport Corp. Id. at 448
*287 The only other reported decision dealing with parental immunity in a negligence action is Convery v. Maczka, supra. In Convery Judge Furman refused to grant summary judgment in favor of a mother whose child had instituted an action against her and a codefendant based upon negligent supervision. The codefendant had also cross-claimed for contribution. The child had broken his arm after jumping from a chair in the basement of the home that he and his mother were visiting. The woman whom the mother and child were visiting, and the mother, had remained in the kitchen while the child played with the other children in the basement. The court remarked that there is no recognized cause of action for negligent supervision against a parent by a child. However, an action does lie in favor of third parties, when the parent has failed to curb a child with known dangerous propensities, or has failed to supervise a child who had access to or use of a dangerous instrumentality. The court, however, did not find the matter appropriate for summary judgment because proofs might be presented supporting a broader cause of action, paralleling that against the hostess,
... that each had a duty arising out of her relationship to him to exercise reasonable care for his protection against unreasonable risk of injury, and that each failed in that duty by not warning him against or otherwise preventing an accident to him during dangerous play. That cause of action ... does not arise exclusively out of the parent-child relationship but is actionable within the limits of reasonable foreseeability against others with a special relationship to the child. [Id. at 416].
Judge Furman concluded that the immunity doctrine had been generally abrogated, and noted that the behavior in question did not fit into either situation in which immunity could still apply. As a result, he found that a properly pleaded claim against the mother could not be barred by the mere existence of the parent-child relationship.
In the absence of further guidance from the Supreme Court, the state of the law appears to be as set out in Gross v. Sears Roebuck & Co., supra. Parent-child immunity has thus been abrogated except where the negligent act clearly involves the exercise of parental authority, or the provision of food, *288 clothing, housing, medical or dental services, or other care, and the Gross court has suggested that these exceptions be construed strictly. Id. at 447. In addition, Convery v. Maczka, supra, the lower court decision subsequent to Gross, has allowed a cause of action by a child against a parent where the cause of action did not arise exclusively out of the parent-child relationship.
Against this factual and legal background we must consider the plaintiff's contentions. Plaintiff first argues that even if parent-child immunity has been abrogated, the alleged act of negligence occurred while the father was exercising his authority over the child, and thus fits within the exceptions to the immunity doctrine as abrogated in Gross v. Sears Roebuck & Co. Construing the exceptions narrowly, as the Gross court suggests at 447,[1] it cannot be said that the parent in this case did the *289 alleged negligent act of supervision in the course of disciplining the child or providing her with necessaries. Plaintiff's contention that the father's conduct fits within an exception to the abrogation of immunity must be rejected.
As an alternative to the first argument, plaintiff urges a broader construction of the exceptions, so as to embrace the conduct engaged in by the father in this case. If the exceptions are to be broadened, or interpreted more expansively, a decision by our higher courts must render such a reading. This court is bound by Gross.
Plaintiff argues further that Gross v. Sears Roebuck & Co. was wrongly decided. Quite obviously, this court cannot blunt the ruling of the Gross decision. The weighing of the policy factors which underlie the exceptions to the abrogation of parent-child immunity will have to be dealt with by our higher courts if they choose to do so.
Plaintiff also urges that New Jersey not recognize a cause of action in tort between a child and its parent for negligent supervision. The issue whether such cause of action exists in New Jersey does not appear to have been specifically addressed by our Supreme Court or the appellate division. While these courts have been abrogating parent-child immunity, there is no *290 indication that a suit between a parent and child can be brought where there is no established cause of action in tort, i.e., no new cause of action appears to have been established.
While the decision in Gross clearly laid out the situations in which immunity would still apply, the decision does not recognize a cause of action for negligent supervision. It appears that the complaint in that case alleged negligent operation of a power mower. The Gross court considered allowing that suit between the parent and child a logical extension of the Supreme Court's decision in France, because it saw no "substantial difference between permitting an unemancipated child to sue his parent for injuries resulting from the parent's negligence in driving a car, and permitting him to sue the parent for the negligent operation of a power mower". Gross, at 446. Put another way, the duty the father owed to the child was no different from the duty he owed to the public at large when he operated the power mower.
The parent in the case at bar was not driving a car or operating a power lawn mower. He was supervising his child as she crossed the street. The counterclaim pleads a cause of action for negligent supervision, control and/or management of the child. Although it had been conceded that the father let the child's hand go and told her to cross after observing the traffic, these acts are all part of the greater responsibility of supervising his child. While this court had no trouble in holding that the negligence alleged does not qualify the parent for immunity within an articulated exception, it hesitates to allow a previously unrecognized tort action for negligent supervision of a child.
Plaintiff urges that New Jersey follow the lead of the New York Court of Appeals in Holodook v. Spencer, 36 N.Y.2d 35, 364 N.Y.S.2d 859, 324 N.E.2d 338 (1974), in which the court considered whether a parent owes a legal duty to supervise his child gave rise to an action for damages for negligent performance of that duty. 36 N.Y.2d at 44, 364 N.Y.S.2d at 866, 324 N.E.2d at *291 345. For public policy reasons, the court found against recognizing a cause of action for negligent supervision.[2]
The Court of Appeals, considering the impact of its decision upon the fundamental family relationship, had this to say:
We can conceive of few, if any accidental injuries to children which could not have been prevented, or substantially mitigated, by keener parental guidance, broader foresight, closer protection and better example. Indeed, a child could probably avoid most physical harm were he under his parents' constant surveillance and instruction, though detriment more subtle and perhaps more harmful than physical injury might result. If the instant negligent supervision claims were allowed, it would be the rare parent who could not conceivably be called to account in the courts for his conduct toward his child.... [36 N.Y.2d at 46, 364 N.Y.S.2d at 867, 324 N.E.2d at 343].
The Holodook court also considered the chilling effect that such a cause of action would have on uninsured parents, who might not seek recovery on behalf of an injured child if found faced with vulnerability to a suit for contribution. This court agrees that this result would be detrimental to an injured child. In a case where there is no insurance coverage, such as in this case, the traditional, recently rejected, reasons for parent-child immunity  prevention of a familial discord and depletion of the family exchequer  come rushing back into play. If a child is injured, and an uninsured parent is sued for contribution, the child may be subject to a substantially reduced recovery and disharmony in the family may erupt to the surface.
All of the reasons presented by plaintiff for not recognizing a cause of action for negligent supervision are persuasive. Nonetheless, it is impossible to ignore the current trend of the New Jersey courts to abrogate intrafamilial immunities and to allow suits between family members in most situations. Not only is this trend apparent from the previously cited cases which have *292 chipped away at parent-child immunity, but the decision of the Supreme Court in Merenoff v. Merenoff, 76 N.J. 535 (1978), has been most explicit in acknowledging the erosion of the doctrine. There, the court abolished interspousal tort immunity, allowing personal injury actions between married persons.
The only tort cause of action sounding in negligent supervision in New Jersey is that in favor of third parties where a parent has failed to curb a child with known dangerous propensities, or has failed to supervise a child using or having access to a dangerous instrumentality. Convery v. Maczka, supra. The facts in the case at bar do not fit either mold. The counterclaim in the instant case, however, could have alleged a broader cause of action, one not arising exclusively out of the parent-child relationship, but actionable within reasonable foreseeability against others with a special relationship to the child. Id. at 416. Others, not parent, such as the school principal in Titus v. Lindberg, 49 N.J. 66 (1977), have been held to have a duty to exercise the care that a person with a special relationship to the child must exercise, to protect the child from unreasonable risk of injury. The child in the case at bar, therefore, could have instituted suit against another adult who owed a special relationship to her, if that adult had escorted her to a curb, observed traffic for her, and told her to cross the street, whereupon she was hit by a vehicle in the roadway.
Although the counterclaim as presently pleaded alleges only negligent supervision of the child, the facts as conceded for purposes of this motion may fit an established cause of action. Since the counterclaim can be amended to plead a cause of action suggested by the facts, it should not be dismissed for failure to state a cause of action upon which relief may be granted. See Muniz v. United Hospitals Med. Center, 153 N.J. Super. 79 (App.Div. 1977); Pressler, Current New Jersey Court Rules, Comment R. 4:6-2 (1981). The motion to dismiss the counterclaim therefore will be denied and defendant may amend the counterclaim in light of this opinion within 20 days.
NOTES
[1] The only reported decision of a New Jersey court construing the exceptions to the abrogation of parent-child immunity is Gross v. Sears Roebuck & Co., supra. The majority of the cases in the jurisdiction in which these exceptions were first put forth support the strict construction adopted by Gross.

The exceptions were first enunciated in Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193 (Sup.Ct. 1963). The Wisconsin courts in Thoreson v. Milwaukee & Suburban Transport Co., 56 Wis.2d 231, 201 N.W.2d 745 (Sup.Ct. 1972), Howes v. Hansen, 56 Wis.2d 247, 201 N.W.2d 825 (Sup.Ct. 1972), and Cole v. Sears Roebuck & Co., 47 Wis.2d 629, 177 N.W.2d 866 (Sup.Ct. 1970), have applied a strict construction to the exceptions.
In Thoreson the actions of a mother who had left her home to borrow something from a neighbor, whereupon her three-year-old dashed out into the street and was injured, were found to be outside the exceptions. The court found that the first Goller exception involved discipline, while the second embraced provision of necessaries that the parent had a legal duty to provide. The Cole court refused to apply the exceptions in a case where a parent had failed to supervise a child who was injured while playing on a swing set. The court found that to fit within an exception, the behavior in question must be more than parental in nature; that is, it must relate to the provision of necessaries. Likewise, the Howes court expressly followed its decision in Thoreson and found that the behavior of a mother whose child was injured while another child operated a power mower was outside the exceptions.
The only Wisconsin decision according the exceptions a broad interpretation is Lemmen v. Servais, 39 Wis.2d 75, 158 N.W.2d 341 (Sup.Ct. 1968). That court found that acts that were parental in nature qualified, but it was handed down prior to the above cited decisions, and has been expressly rejected by Cole and Thoreson.
Contra to this trend of strict construction is Cherry v. Cherry, 295 Minn. 93, 203 N.W.2d 352 (Sup.Ct. 1972), a decision of a jurisdiction which has also adopted the Goller exceptions. In that case an infant placed an extension cord in her mouth and sustained injuries. The court found that placement of extension cords in the family home was within the discretion of the parents, and applied the exceptions.
This court finds the Wisconsin decisions to be particularly instructive, as the New Jersey Supreme Court has been guided by the Goller exceptions from the first decisions that began to abrogate the immunity. The exceptions were noted in dicta in France v. A.P.A. Transport Corp. and Small v. Rockfeld, both supra, before being embraced as the law in Gross v. Sears Roebuck & Co., supra.
[2] A number of jurisdictions which have abolished parent-child immunity have recognized causes of action for negligent supervision of a child by a parent. See Gibson v. Gibson, 3 Cal.3d 914, 92 Cal. Rptr. 288, 479 P.2d 648 (Sup.Ct. 1971); Petersen v. City and County of Honolulu, 51 Hawaii 484, 462 P.2d 1007 (Sup.Ct. 1970); Thoreson v. Milwaukee & Suburban Transport Co., 56 Wis.2d 231, 201 N.W.2d 745 (Sup.Ct. 1972).