COLE (Jeffrey), by Guardian *ad litem,* Plaintiff, COLE (John W.), Plaintiff and Appellant, v. SEARS, ROEBUCK & COMPANY, Defendant: WILLER and wife, Defendants and Third-Party Respondents: COLE (Elayne), Third-Party Defendant and Appellant.

*No. 318. Argued June 3, 1970.—Decided June 26, 1970.*
(Also reported in 177 N. W. 2d 866.)

630

For the appellants John W. and Elayne Cole there was a brief by *Schellinger & Doyle* and *Stanley F. Schellinger*, all of Milwaukee, and oral argument by *Stanley F. Schellinger.*

For the respondents Ronald B. and Karen Willer there was a brief by *Hayes & Hayes* and *Hanlin J. Hayes*, all of Milwaukee, and oral argument by *Hanlin J. Hayes.*

CONNOR T. HANSEN, J. In *Goller v. White* (1963), 20 Wis. 2d 402, 413, 122 N. W. 2d 193, this court abrogated parental immunity except in two situations:

". . . (1) Where the alleged negligent act involves an exercise of parental authority over the child; and (2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision

of food, clothing, housing, medical and dental services, and other care. Accordingly, the rule is abolished in personal-injury actions subject to these noted exceptions. . . ."

Appellants argue that control of play activity of a young child is a parental function which constitutes an exercise of parental discretion with respect to "other care" as that term was used in *Goller v. White, supra,* and therefore the trial court should have upheld their demurrer to the counterclaim and third-party complaint.

This court, in *Lemmen v. Servais* (1968), 39 Wis. 2d 75, 158 N. W. 2d 341, held that parents who failed to properly instruct a six-year-old child in how to leave a school bus and cross a highway were exercising ordinary parental discretion with respect to "other care" of their child. In that case language was used which appellants now point to in arguing that their alleged negligence (supervision of the play of a young child) is a familial obligation—as distinct from a general obligation—and is, therefore, an area protected by parental immunity.

". . . The two exceptions enunciated in *Goller* recognize that within the framework of parental authority and discretion, parents must be accorded immunity from litigation which in fact would disrupt family harmony and unity. The immunity is limited to transactions which are essentially parental. *Dunlap v. Dunlap* (1930), 84 N. H. 352, 150 Atl. 905.

"A new and heavy burden would be added to the responsibility and privilege of parenthood, if within the wide scope of daily experiences common to the upbringing of children a parent could be subjected to a suit for damages for each failure to exercise care and judgment commensurate with the risk. Such is not the rule of *Goller." Lemmen v. Servais, supra,* pages 79, 80.

Appellants assert that a parent's supervision of a child's play is an activity entitled to immunity because it involves direct parental control and is primarily an interaction between parent and child rather than a nondomestic activity. However, parental immunity is not deter-

mined by whether the negligence arises out of an "essentially parental" act involving parental control and this is not the standard this court set forth in *Goller*.

Granting immunity to a parent solely because the negligence complained of arose out of a familial obligation would give immunity the same breadth and scope as in those jurisdictions which carved out another exception to the rule of immunity premised on whether the negligent act was an activity intimately associated with the parent-child relationship. However, this approach was considered in *Goller* [1] and rejected when the rule of parental immunity was abolished in personal injury actions subject to the two noted exceptions. In rejecting the rationale in cases such as *Borst v. Borst, supra, Goller* limited immunity to a greater degree than simply acts which are "essentially parental" in nature. To qualify for the exception to liability in this state, the act must not only be parental in nature but it must also constitute an exercise of discretion with "respect to the provision of food, clothing, housing, medical and dental services, and other care." *Goller v. White, supra.* The term "other care" is not so broad as to cover all acts intimately associated with the parent-child relationship.

In *Lemmen* this court held that other care included an act dealing with a child's education. This was premised on the parent's legal obligation to ensure their child's basic education, and parental immunity from negligence was viewed as a means of enabling a parent to discharge this duty.

" ' "The legal obligations of parenthood include the duties of support, of care and protection, and of education." 39 Am. Jur., *Parent and Child*, p. 593, sec. 6. . . . '

---

[1] "The courts of Ohio and Washington have held that the parental-immunity rule does not apply if the parent was engaged in his business or occupation at the time he committed the negligent act. *Signs v. Signs* (1952), 156 Ohio St. 566, 103 N. E. (2d) 743, and *Borst v. Borst* (1952), 41 Wash. (2d) 642, 251 Pac. (2d) 149." *Goller v. White, supra,* p. 411.

". . . The immunity granted by these two exceptions is accorded the parent, not because he is a parent, but because as a parent he pursues a course within the family constellation which society exacts of him and which is beneficial to the state. The parental nonliability is not granted as a reward, but as a means of enabling the parents to discharge the duties which society exacts. . . ." *Lemmen v. Servais, supra,* pages 78, 79.

The legal obligation to provide food, clothing, housing, medical and dental services deals with the necessities of health, morals and well-being with which a child must be provided, or the parents' failure in this regard may be prevented by the state.[2]

"It is the right and duty of parents under the law of nature as well as the common law and the statutes of many states to protect their children, to care for them in sickness and in health, and to do whatever may be necessary for their care, maintenance, and preservation, including medical attendance, if necessary. An omission to do this is a public wrong which the state, under its police powers, may prevent. The child has the right to call upon the parent for the discharge of this duty, and public policy for the good of society will not permit or allow the parent to divest himself irrevocably of his obligations in this regard or to abandon them at his mere will or pleasure. . . ." 39 Am. Jur., *Parent and Child,* p. 669, sec. 46.

Education comes within this concept of care; however, the facts presented by the pleadings in this case do not fall within the class of legal obligations of the type specified in *Goller.* Supervision of a child's play indeed involves an area which is essentially parental, but society does not exact a legal duty with respect to such an obligation as is the case with providing a child with food, housing, medical and dental services and education. In this regard, construing "other care" as that term is used in

---

[2] *See* sec. 48.13, Stats.

relation to the phrase "food, clothing, housing, medical and dental services," does not warrant an expansion of immunity into an area of parental transactions which is not essentially concerned with providing a child with such similar necessities. "Of course, the rule *ejusdem generis* ordinarily limits the meaning of general words to things of the same class as those enumerated under them. 3 Words & Phrases, 2328, and cases there cited." *Gallagher v. McKeague* (1905), 125 Wis. 116, 121, 103 N. W. 233.

The trial court properly overruled the demurrers of the appellants.

*By the Court.*—Order affirmed.