767 P.2d 1187

**Tod F. SCHLEIER, for and on Behalf of Rachel Toba ALTER, a minor, Plaintiffs–Appellants,**

v.

**William ALTER and Ellen Alter, husband and wife, Defendants–Appellees.**

**No. 1 CA–CIV 9707.**

Court of Appeals of Arizona,
Division 1, Department C.

Jan. 10, 1989.

Lawrence O. Anderson, P.C. by Lawrence O. Anderson, Phoenix, for plaintiffs-appellants.

Black, Robertshaw, Copple & Pozgay, P.C. by Steven D. Copple, David L. O'Daniel, Phoenix, and Horne, Kaplan and Bistrow by Amy L. Rosenthal, Phoenix, for defendants-appellees.

OPINION

FIDEL, Judge.

A child severely bitten by the family dog brings this lawsuit against her parents. To determine the child's appeal from summary judgment for her parents, we must answer two questions:

1. *Common law liability:* When the owners of a dog with demonstrated vicious tendencies toward children expose the dog to their own child, are they shielded by the parental immunity doctrine from common law liability for injuries the dog inflicts?

2. *Statutory liability:* Does A.R.S. § 24–521, Arizona's strict liability dog bite statute, apply when the victim is a child of and resides in the same household as the owners of the dog and is bitten at the family home?

For reasons which follow, we affirm summary judgment for the defendants on the plaintiff's statutory claim, but reverse

summary judgment and order the reinstatement of the plaintiff's common law claim.

## FACTS AND PROCEDURAL HISTORY

When Rachel Toba Alter, the plaintiff, was born on December 6, 1984, her parents, William and Ellen Alter, owned a German short-haired pointer named Misty, which they had bought as a puppy in 1978 or 1979. Shortly after Rachel's birth, the dog began to show resentment toward children. She first bit the defendants' three year old niece at a family gathering in July or August of 1985. Approximately one month later, the dog bit Rachel at her grandmother's home. Rachel was bitten again in October at the Alters' own residence. The bites on each occasion were to the victim's head or face. Despite these episodes, the Alters remained fond of the dog and kept her in the hope that such attacks would not recur. William Alter recognized, however, that Misty posed a significant risk to Rachel if the two were left alone in the same room.

On November 3, 1985, Rachel, her parents, and some family visitors were breakfasting in the Alters' kitchen. Misty lay beneath the kitchen table. As Rachel moved from a chair to the dishwasher, the dog stood, lunged, and bit her on the face. Rachel, eleven months old, fell bleeding from a wound that required twenty-five stitches to repair. She had done nothing to provoke the dog.

A conservator commenced this lawsuit on behalf of Rachel on August 8, 1986. On cross-motions for summary judgment, the trial court ruled for the defendants, reasoning as follows:

> The issue in this case boils down to whether the alleged incident resulting in an injury to the minor child from a dog bite comes within the doctrine of parental immunity or alternatively falls within the exception to such doctrine.
>
> The exceptions to such doctrine are clearly not limited to automobile accident cases. However, the doctrine still applies as to inter-family activities involving parental discipline, care and control. Therefore, if the incident resulting in the injury is one that falls within the scope of parental care and control or the exercise of parental authority and the adequacy of child care, the doctrine of parental immunity applies, and the child is precluded from recovering from the parents.
>
> It is this Court's opinion that a statute imposing strict liability (as in this case for dog bite) does not change the above rule and the doctrine of parental immunity would still apply if the incident arose within the realm of parental discretion as to the care and control of the child, or involved parental judgment with regard to the care of the child.
>
> The Court determines that the permitting of the child to be around a dog kept in the house is an issue of parental judgment regarding the care and control of the minor child and therefore falls within the doctrine of parental immunity.

## PARENTAL IMMUNITY IN ARIZONA

■ The parental immunity doctrine, first articulated in *Hewlett v. George*, 68 Miss. 703, 9 So. 885 (1891), originally prohibited any common law tort suit by a child against a parent. *See generally* W. Prosser, W. Keeton, *Law of Torts* § 122 at 904–10 (5th ed. 1984).

Arizona first applied the parental immunity doctrine in *Purcell v. Frazer*, 7 Ariz. App. 5, 435 P.2d 736 (1967). However, our supreme court overruled *Purcell* and partially abrogated the doctrine in *Streenz v. Streenz*, 106 Ariz. 86, 471 P.2d 282 (1970). There an unemancipated minor child sued her parents for damages resulting from a one-car accident in which the mother was the driver. The court stated:

> We feel that two principal factors undermine [the] ... "domestic tranquility" rationale expressed in *Purcell v. Frazer*, *supra*, and compel an overruling of that case. One factor ... is that the common law has long permitted child to sue parent in property or contract. It is not unsafe to say that some of the most bitter family disputes arise over property, and yet parental immunity does not limit causes of action in this area. Is it

reasonable to say that our law should protect the property and contract rights of a minor more zealously than the rights of his person? Secondly, we cannot ignore the almost universal existence of liability insurance, particularly in the automobile accident realm. Where such insurance exists, the domestic tranquility argument is hollow, for in reality the sought after litigation is not between child and parent but between child and parent's insurance carrier.

. . . .

Where insurance is available to compensate the child for his injuries, the possibility of disruption of family unity and peace is negligible. On the other hand, where insurance is nonexistent, we doubt that suits by unemancipated minor children against their parents will be frequently entertained. Overwhelmingly weighted against the possibility of such disruptive suits is the vital interest of the public in protecting its members from loss caused by another's negligence.

106 Ariz. at 88, 471 P.2d at 284.

This stated rationale had breadth enough for total abrogation of the doctrine. Yet our supreme court followed Wisconsin in expressing policy reasons to leave it partially intact:

[W]e agree with Judge Howard [who dissented in the Court of Appeals opinion in *Streenz* ] that "the role of *paterfamilias* should not be usurped by the judiciary as to intrafamilial activities involving parental discipline, care and control." 11 Ariz. App. [10] at 13, 461 P.2d [186] at 189 [ (1969) ]. The Wisconsin Supreme Court, in *Goller v. White*, [20 Wis.2d 402, 122 N.W.2d 193 (1963) ] recognized this important aspect of parental discretion, and *held that the parental immunity doctrine "ought to be abrogated except in these two situations:*

(1) Where the alleged negligent act involves an exercise of parental authority over the child; and

(2) Where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." 122 N.W. 2d at 198.

These exceptions were more fully explained in a subsequent Wisconsin decision, *Lemmen v. Servais*, 39 Wis.2d 75, 158 N.W.2d 341 (1968):

"The immunity granted by these two exceptions is accorded the parent, not because he is a parent, but because as a parent he pursues a course within the family constellation which society exacts of him and which is beneficial to the state. The parental non-liability is not granted as a reward, but as a means of enabling the parents to discharge the duties which society exacts." 158 N.W.2d at 344.

While we are persuaded that parental immunity from tort action by an unemancipated child should be retained for limited purposes such as those set down by the Wisconsin court, *we find it unnecessary at this time to delineate the scope in which the parental immunity rule will be applied.* Our holding, permitting Sharon Streenz to sue her parents in tort, is limited to the factual situation before us.

106 Ariz. at 89, 471 P.2d at 285 (emphasis added).

The delineation found unnecessary in *Streenz* was supplied in part in *Sandoval v. Sandoval*, 128 Ariz. 11, 623 P.2d 800 (1981), where the facts presented a pure issue of parental supervisory neglect. In *Sandoval*, a father neglected to latch the gate to the fenced front yard of the family home. His four-year-old son rode a tricycle into the street, where he was struck by an uninsured motorist. The parents had homeowner's insurance, and their son brought a negligence action against them. The supreme court affirmed the trial court's determination that the parents were immune from the child's suit.

The court distinguished *Streenz*, in which the parent as driver owed the duty to drive carefully not only to her child but to the world at large:

If an accident resulted because of the parent's negligent driving, any passenger in the vehicle could have been in-

jured, and the driver should be liable to that passenger regardless of the fact that the passenger is the child of the driver.

*Sandoval*, 128 Ariz. at 13, 623 P.2d at 802. In contrast, Mr. Sandoval's duty to latch his gate was "owed to the child alone and a part of the parental 'care and control' or 'other care' to be provided by the parents. *Streenz, supra; Goller, supra.*" *Sandoval*, 128 Ariz. at 13, 623 P.2d at 802.

The court concluded:

We do not, by this case, limit the abrogation of the parental immunity doctrine to automobile negligence cases. We will continue to consider, on a case by case basis, the actual cause of the injury and whether the act of the parent breached a *duty owed to the world at large, as opposed to a duty owed to a child within the family sphere.*

128 Ariz. at 14, 623 P.2d at 803 (emphasis added).

With this review of parental immunity as it has evolved in Arizona, we return to the case at hand.

## COMMON LAW CLAIM

In *James v. Cox*, we summarized the basis for liability at common law for injury by domestic animals:

A possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm.

130 Ariz. 152, 154, 634 P.2d 964, 966 (App. 1981) (quoting *Jones v. Manhart*, 120 Ariz. 338, 340, 585 P.2d 1250, 1252 (App.1978).)

The defendants Alter acknowledge, as they must, that they knew the dangerous propensities of their dog. In a three to four month span Misty had bitten their three-year-old niece once and the toddler Rachel twice. In recognition of the risk, the Alters strove not to leave Rachel and Misty alone in the same room. That effort failed to alleviate the harm.

The trial court viewed the behavior of defendants as a failure to properly supervise *their daughter* to keep her safely distant from a dangerous dog. We do not view their duty so narrowly. The defendants' limited parental duty to supervise their daughter was eclipsed in this case by the more general duty to supervise *their dog*. Misty was not some dog encountered in the neighborhood or on the street; she was the defendants' dog, and the defendants had ample notice that she posed a danger to small children in general, not to Rachel alone. While it might fall within the immunized sphere of parental discretion to set the bounds of access to animals by one's child, such immunity dissolves when one sets the bounds of access to children by one's dog. The actionable breach in this case was not the failure to curb the child but the failure to curb the dog; though the former duty may have been restricted to "the family constellation," *Streenz*, 106 Ariz. at 89, 471 P.2d at 285, the latter was owed to the world at large. *Sandoval*, 128 Ariz. at 14, 623 P.2d at 803.

In *Sandoval* the supreme court applied parental immunity when a parent violated a familial duty to the child alone *as opposed to* a duty to the world at large. *Id.* at 14, 623 P.2d at 803. The issue in this case is differently cast. Here the parents violated *both* a duty to the child and a duty to the world at large. In this circumstance, we hold, the former duty is subsumed within the latter, and parental immunity ceases to apply.

Misty's history revealed her as the equivalent of a "dangerous instrumentality" to children. *See* Prosser & Keeton, *supra*, § 122 at 909 (liability clearly justified "where the parent himself maintains a dangerous instrument such as dynamite caps or a vicious dog in the home.") The defendants—not as parents but as dog-owners—owed the duty to the world at large to isolate that instrumentality from all children including their own. To the violation of that duty, no immunity attached.

We acknowledge, as Judge Shelley comments in concurrence, that this record lacks

evidence whether children other than Rachel were exposed to Misty after the dog first bit a child. Such evidence, however, would demonstrate only the extent to which defendants met their general duty to isolate the dog. A duty is no less general for being partially performed.[1]

We conclude that the trial court erred in granting summary judgment to the parents on Rachel's common law claim.[2]

## STATUTORY STRICT LIABILITY CLAIM

We next consider the viability of Rachel's statutory strict liability claim. The trial court disposed of this claim, like her common law claim, on grounds of parental immunity. We affirm on a different ground.

A.R.S. § 24–521 provides:

The owner of a dog which bites a person when the person is in or on a public place or lawfully in or on a private place, including the property of the owner of the dog, is liable for damages suffered by the person bitten, regardless of the former viciousness of the dog or the owner's knowledge of its viciousness.

We begin by observing that a claim pursuant to A.R.S. § 24–521 et seq. is legally distinct from a common law dog bite claim. *Murdock v. Balle*, 144 Ariz. 136, 138, 696 P.2d 230, 232 (App.1985). The parental immunity doctrine—now abrogated in part—arose for public policy reasons to shield parents from tort liability at common law. It does not necessarily follow that the doctrine—to the extent it remains unabrogated—applies to shield parents from special liabilities created by statute. We will assume, however, *arguendo*, that parental immunity might extinguish a purely statutory liability. If we were to accept the further assumption that Rachel, a family member bitten by the family dog in the family home, came within the class of persons protected by A.R.S. § 24–521, we would hold parental immunity inapplicable in this case for the reasons expressed in the preceding section of this decision. The duty imposed upon dog owners by § 24–521 is not a familial duty confined to the care of one's own child, but rather a general duty to a large protected class. Parental immunity does not attach in Arizona to the violation of so general a duty, even though the victim of the breach may be one's child.

Accordingly, we do not uphold the trial court's strict liability ruling on grounds of parental immunity. We uphold it rather because we find Rachel excluded from the limited class of persons designated for strict liability protection under A.R.S. § 24–521.

We have previously held that §§ 24–521 et seq. derogate the common law and thus are narrowly and literally construed. *See Murdock*, 144 Ariz. at 138, 696 P.2d at 232; *James*, 130 Ariz. at 156–57, 634 P.2d at 968–69, *Toney v. Bouthillier*, 129 Ariz. 402, 406, 631 P.2d 557, 561 (App.1981). We consider the statute's restrictions in that light.

The strict liability remedy established by § 24–521 is limited to dog bite victims bitten when "in or on a public place or *lawfully in or on a private place, including the property of the owner of the dog.*" (Emphasis added.) The issue we address is whether Rachel was "lawfully in or on ...

---

1. Judge Shelley concurs in the result because he concludes that the defendants' failure did not involve the exercise of *ordinary* parental discretion. Although we neither employ nor reject that rationale, we fear that the distinction between ordinary and extra-ordinary acts of parental discretion may be too impressionistic to supply a useful or predictable basis for parental immunity. We prefer to inquire under *Sandoval* whether the operative duty is a parental duty owed to the child alone or a more general duty owed not only to the child but to the world at large.

2. Our ruling makes it unnecessary for us to address Rachel's argument that the application of the parental immunity doctrine violates Ariz. Const. art. 18, § 6, which provides, "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." We note additionally that Rachel failed to raise this issue in the trial court. We will not consider an argument raised for the first time on appeal. *See Campbell v. Warren*, 151 Ariz. 207, 208, 726 P.2d 623, 624 (App.1986).

the property of the owner of the dog" within the meaning of that statutory phrase.

Undefined statutory terms are construed according to common usage. A.R.S. § 1–213. Unquestionably, by common usage, Rachel was lawfully present at her parents' and her own home. Common usage yields, however, when statutory terms are specially defined or otherwise hold "peculiar . . . meaning in the law." *Id.*

The phrase in question demonstrates the latter rule, for it is specially and narrowly defined by A.R.S. § 24–522, the definitional companion to § 24–521. Section 24–522 provides:

> A person is *lawfully in or on the private property of the owner of a dog within the meaning of this article* when an invitee or guest, or when in the performance of a duty imposed upon him by law of the state or United States, or by ordinances of a municipality in which such property is located.

(Emphasis added.)

Excluded from this definition are family members residing and bitten at the owner's home. We believe that this exclusion by the legislature was deliberate.

Plaintiff argues otherwise. She contends that § 24–522 was intended only to clarify the application of § 24–521 in potentially uncertain situations, not to limit its scope. We disagree. In the absence of § 24–522, there would have been no uncertainty concerning the lawful presence of invitees, guests, or persons present to perform a duty imposed by law. Such persons would be regarded as lawfully present by common understanding of the term. No definitional statute was needed to accomplish their *inclusion*. Section 24–522 is meaningful only if interpreted to accomplish the *exclusion* of all others.

This reading is enhanced by the observation that the legislature chose only to define persons "lawfully in or on the private property *of the owner of a dog*." (Emphasis added.) It found it unnecessary to define those lawfully present at any other private place. The legislature was apparently content to rely upon common usage to include invitees, guests, persons performing legal duties, family residents, and others among those lawfully present at other private places. By limiting explicit categorization of the lawfully present to the dog-owner's property alone, the legislature made its restrictive purpose clear.

Our holding is narrow. This is not a case, for example, of a rent-paying member of the owner's household—family member or not—who asserts the protected status of invitee. Nor is it a case of a member of the owner's family and household who is bitten by the family dog at a public place or at someone else's private property. Such cases, and their multiple variations, must be decided when they arise by careful examination of the statutory inclusions and exclusions. We hold today only that Rachel was neither an invitee, a guest, nor a person performing a duty imposed by law when she was bitten at her parents' home. As a family resident there, she was excluded from the limited group of persons that could avail themselves of statutory strict liability protection, and she was left to her common law remedies alone.

## CONCLUSION

For the reasons stated in this opinion, the judgment with respect to the statutory claim is affirmed, the judgment with respect to the common law claim is reversed, and this case is remanded to the trial court for proceedings consistent with this opinion.

CORCORAN, P.J., concurs.

SHELLEY, Judge, specially concurring:

The record is devoid of any evidence that small children visited the Alter home. Also, there was no evidence that the dog was dangerous to anyone but small children. The duty of the driver of a motor vehicle on a public street is much different than the duty of parents in their own home wherein lawful entry may be made only by invitation. Therefore, I do not think the *Streenz* world-at-large theory applies in

this case. In *Sandoval,* our supreme court, in regard to *Streenz,* stated:

> In *Streenz, supra,* we did not delineate precisely the areas in which parental immunity would continue to be a bar to suit by a minor for the negligence of his parents, though it is apparent that automobile cases are ones in which the doctrine of parental immunity is abolished. This, however, is not an automobile case in the usual sense in that the parent's obligation did not arise out of his driving of an automobile. The direct cause of Ramero's injuries was the impact of the Perez automobile, not the act of leaving the gate open. *We disinguish this act from the act of the parents in Streenz, supra, in which the parent, as a driver, had a duty to the world at large to drive carefully. If an accident resulted because of the parent's negligent driving, any passenger in the vehicle could have been injured, and the driver should be liable to that passenger regardless of the fact that the passenger is the child of the driver.*

*Sandoval,* 128 Ariz. at 13, 623 P.2d at 802 (emphasis added).

I concur in the result because the parents were on notice that Misty constituted a grave danger to Rachel. They had a duty to remove that danger from the home. The two *Goller* exceptions to the abrogation of the doctrine of parental immunity set forth in *Streenz* are not applicable to the facts of this case. The failure of the parents to act did not involve an exercise of parental authority over the child. Neither did it involve the exercise of *ordinary* parental discretion with respect to the provision of food, clothing, housing, medical and dental services, *and other care.* Keeping Misty in the home certainly was not an exercise of ordinary parental discretion. The doctrine of parental immunity cannot be used to protect the parents from the duty to remove Misty, an obvious and known danger, from the home, at least before it bit Rachel for the third time.