870 P.2d 1149

Christopher BROADBENT, a minor, by his Conservator, Phillip E. BROADBENT, Plaintiff–Appellant,

v.

Laura J. BROADBENT, Defendant–Appellee,

NORTHBROOK INDEMNITY COMPANY, Real Party in Interest–Appellee.

STATE FARM FIRE & CASUALTY COMPANY, a foreign corporation, Plaintiff–Appellee,

v.

Phillip E. BROADBENT and Laura J. Broadbent, husband and wife, and Christopher Broadbent, a minor, Defendants–Appellants.

No. 1 CA–CV 91–0202.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 7, 1993.

Review Granted April 5, 1994.

Kern & Wooley by Robert L. Greer, Mesa, for plaintiff-appellant Phillip Broadbent.

Ulrich, Thompson & Kessler, P.C. by Paul G. Ulrich and Donn G. Kessler, Phoenix, and Musick, Peeler & Garrett by Wayne B. Littlefield and Lynn A. O'Leary, Los Angeles, CA, for real party in interest Northbrook.

Ridenour, Swenson, Cleere & Evans by James W. Evans, Phoenix, for defendant-appellee Laura J. Broadbent.

Peshkin & Kotalik by Lawrence A. Peshkin and E.J. Kotalik, Jr., Phoenix, for plaintiff-appellee State Farm.

Broadbent & Walker by John A. Summers, Phoenix, for defendants-appellants Phillip, Laura, and Christopher Broadbent.

## OPINION

CONTRERAS, Presiding Judge.

In this appeal, we are presented the question of whether a mother whose child nearly drowns when she negligently fails to supervise him is immune from common law liability for his injuries under the parental immunity doctrine. We hold that the doctrine of parental immunity applies under the circumstances in the present case and therefore affirm the trial court's grant of summary judgment.

## I. BACKGROUND AND PROCEDURAL HISTORY

On April 13, 1984, Appellant Christopher Broadbent ("the child") was playing in and around the swimming pool at the Broadbent home while his mother, Appellee Laura Broadbent ("the mother"), watched him. No one else was home. At that time, the child was two and one-half years old and did not know how to swim. While he was in the water, the child wore inflatable vinyl rings on his upper arms to assist him in staying afloat.

The child got out of the pool and removed the flotation rings. The telephone inside the

house rang and the mother went inside to answer it. She left the child unattended beside the pool. The mother talked on the telephone five to ten minutes. While standing and talking on the telephone, she could not see the pool area unless she stretched the telephone cord to its limit and stretched her body. In addition, the mother had previously removed her contact lenses and could not see the outside area clearly. After being on the telephone for at least five minutes, the mother stretched the telephone cord to check on the child but could not see him. She dropped the telephone, ran to the pool, and saw the child floating in the deep end of the pool. The child was revived, but suffered severe brain damage.

On February 1, 1990, a tort action in the name of the child was filed against his mother, alleging that her negligence caused his injuries. State Farm Fire and Casualty Company ("State Farm"), which was the Broadbent's insurer under a homeowner's policy, subsequently filed an independent action against Phillip, Laura, and Christopher Broadbent ("the coverage defendants") seeking a declaration that the child's claim was not covered under the homeowner's policy. The trial court consolidated the two cases.

In the declaratory judgment portion of the consolidated action, State Farm moved for summary judgment arguing that the household exclusion in the homeowner's policy precluded coverage of the child's claim. State Farm also argued that under Arizona's parental immunity doctrine, the mother could not be legally liable for her child's injuries.

The coverage defendants responded to State Farm's motion for summary judgment and filed a cross-motion for summary judgment in which they argued that the parental immunity doctrine did not bar the child's claim because, rather than only a parental duty to the child, the mother had a general duty to not allow unsupervised young children access to the family's swimming pool. They also asserted that the doctrine of reasonable expectation precluded application of the household exclusion.

In the tort claim portion of the consolidated action, the mother, in her position as a named defendant, moved for summary judg-

ment on the basis of the parental immunity doctrine conceding that the cause of the child's injury was her negligent supervision. The trial court entered a single judgment granting summary judgment for State Farm on coverage and for the mother on the tort claim.

A timely notice of appeal from the judgment was filed. The coverage issue has been abandoned on appeal. Upon stipulation of the parties, this Court permitted Northbrook Indemnity Company, which provided personal umbrella liability insurance coverage on the date of the accident at issue, to appear in this appeal as a real party in interest and on behalf of the mother.

## II. DISCUSSION

### A. The Parental Immunity Doctrine in Arizona

The parental immunity doctrine is a common law creation that originated in *Hewlett v. George,* in which the Mississippi Supreme Court held that in the interest of fostering peace and tranquility in families, children were not permitted to sue their parents in tort. 68 Miss. 703, 9 So. 885 (1891) (abrogated by *Glaskox v. Glaskox,* 614 So.2d 906 (Miss.1992)). The doctrine was adopted in Arizona in *Purcell v. Frazer,* in which this Court held that the father was immune from liability to his unemancipated minor children for their injuries sustained in an accident allegedly caused by the father's negligent driving. 7 Ariz.App. 5, 435 P.2d 736 (1967).

The Arizona Supreme Court, however, overruled *Purcell* in *Streenz v. Streenz,* a case in which a minor child sued her parents for injuries sustained in a one-car accident where she was the passenger and her mother was the driver of the car. 106 Ariz. 86, 89, 471 P.2d 282, 285 (1970). The court held that the unemancipated minor had a right of action against her parents for injuries sustained in the automobile accident allegedly caused by her mother's negligent driving. *Id.* The *Streenz* court *partially* abrogated the parental immunity doctrine reasoning (1) the common law had long permitted children to sue their parents in property or contract actions and it was reasonable for the law to

likewise protect the rights of children in personal injury actions, and (2) the existence of liability insurance, particularly for automobile accidents, meant that the possibility of disrupting family unity and peace was negligible. *Id.* at 88, 471 P.2d at 284. The court explained that by holding the parental immunity doctrine did not apply in these particular circumstances, it did not intend to completely abrogate the doctrine. *Id.* at 89, 471 P.2d at 285. Instead, the court indicated that courts should not usurp intrafamilial activities involving parental discipline, care, and control and cited with approval the reasoning in *Goller v. White*, 20 Wis.2d 402, 122 N.W.2d 193 (1963), regarding the two situations in which the parental immunity doctrine should apply:

(1) Where the alleged negligent act involves an exercise of parental authority over the child; and

(2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care.

106 Ariz. at 89, 471 P.2d at 285 (quoting *Goller*, 122 N.W.2d at 198).

Our supreme court next considered the application of the parental immunity doctrine in *Sandoval v. Sandoval*, 128 Ariz. 11, 623 P.2d 800 (1981). The issue in *Sandoval* was whether the doctrine barred a suit by a child against his parents for the father's alleged negligence in leaving a gate open in the fenced front yard of the family home through which the four-year-old child rode his tricycle and was then struck by a passing automobile. *Id.*

The *Sandoval* court distinguished the act of the father leaving the gate open from the act of the parent in *Streenz* stating that in *Streenz* "the parent, as a driver, had a duty to the world at large to drive carefully." *Id.* at 13, 623 P.2d at 802. The court reasoned that "[i]f an accident resulted because of the parent's negligent driving, any passenger in the vehicle could have been injured, and the driver should be liable to that passenger regardless of the fact that the passenger is the child of the driver." *Id.* The circumstances in the case before the court were

different than *Streenz*, however. The *Sandoval* court determined that "the closing of the gate was a duty owed to the child alone and a part of the parental 'care and control' or 'other care' to be provided by the parents." *Id.*

In affirming the trial court's ruling that the parents were immune from suit, the *Sandoval* court noted that it was not limiting the abrogation of the parental immunity doctrine to automobile negligence cases. *Id.* at 14, 623 P.2d at 803. It stated that it would "continue to consider, on a case by case basis, the actual cause of the injury and whether the act of the parent breached a duty owed to the world at large, as opposed to a duty owed to a child within the family sphere." *Id.*

In *Schleier v. Alter*, this Court examined the application of the parental immunity doctrine in a situation in which a child bitten by the family dog sued her parents for negligence. 159 Ariz. 397, 767 P.2d 1187 (Ct.App. 1989). The parents acknowledged that they knew their dog posed a danger to children. *Id.* at 400, 767 P.2d at 1190. In *Schleier*, this Court characterized *Sandoval* as a case in which "the facts presented a pure issue of parental supervisory neglect" such that the father was immune from liability because he "violated a familial duty to the child alone *as opposed to* a duty to the world at large." *Id.* at 399–400, 767 P.2d at 1189–90.

In contrast, the Court found in *Schleier* that the parents' duty to supervise their daughter was surpassed by the more general duty to supervise their dog. *Id.* at 400, 767 P.2d at 1190 (although the duty to supervise their child may have been limited to the family sphere, parents' duty to supervise their dog was owed to the world at large). This Court held that the parents violated both duties and that the parents' duty to supervise their child was subsumed within the duty to supervise their dog, which was owed to the world at large. Therefore, this Court held that parental immunity did not apply. *Id.*

This Court recently considered the application of the *doctrine* to natural parents [1] in *Sandbak v. Sandbak,* 166 Ariz. 21, 800 P.2d 8 (Ct.App.1990). In *Sandbak,* a young child had wandered onto a neighbor's property and was severely mauled by the neighbor's dog. *Id.* at 22, 800 P.2d at 9. This Court barred the child's claim, concluding that the doctrine of parental immunity is not limited to those acts that a parent is legally obligated to perform. *Id.* at 23, 800 P.2d at 10.

This Court also rejected the child's argument in *Sandbak* that her parents violated a duty to the world at large by allowing her to trespass on the neighbor's property. *Id.* This Court determined that even if such a duty existed, the parents' violation of that duty was not the proximate cause of her injury. *Id.* The direct cause of her injuries was the action of the dog, not her parents' act in allowing her to trespass. *Id.* This Court found that this situation was analogous to that of *Sandoval* in which the direct cause of the child's injuries was the impact of the automobile, and not the act of leaving the gate open. *Id.* In addition, this Court found that there was "no connection between the alleged breach of a duty to the world at large" and the action between the child and her parents. *Id.*

With the foregoing review of the parental immunity doctrine as it has evolved under the case law in Arizona, we consider the present case and the question of whether the doctrine applies to a parent who negligently failed to supervise her child around the family's swimming pool.

### B. Applicability of the Parental Immunity Doctrine to the Present Case

On appeal, it is argued on behalf of the child that his mother's duty to him arose out of her obligation as a property owner. It is maintained that she had a nonparental duty—a duty to the world at large—to exercise reasonable care to protect all children from the danger posed by the swimming pool. It is further argued, relying on *Schleier,* that any parental duty she had to her child alone was subsumed within her general duty to any child on the premises.

After considering Arizona case law on the parental immunity doctrine, we disagree. The child's counsel would have us liken his case to *Streenz* and *Schleier,* where the doctrine of parental immunity did not apply. However, we conclude that the present circumstances in which the child was left unattended near a family swimming pool and received injuries involved parental supervision and "other care." Therefore, the nature of the duty owed by the parent was not like those in *Streenz* and *Schleier.* Specifically, *Schleier* is limited to its facts and does not stand for the proposition that parents can be sued by their child if that child is harmed by the family pet based on the fact that the dog *could* be dangerous. 159 Ariz. at 400–01, 767 P.2d at 1190–91. The distinguishing fact in *Schleier* is that the parents knew that the dog had dangerous propensities because it had bitten children three times in the preceding four months and, therefore, they had a duty to the world at large to supervise their dog. *Id.*

Although on behalf of the child in the present case it is argued otherwise, a pool itself cannot be likened to the dog in *Schleier.* A pool is like many other things that *could* be dangerous to a child, such as a hot stove burner, a cigarette lighter, or even paint thinner. The situation where a parent allows a child to be unattended around items that could be dangerous falls into the category of negligent parental supervision, which does not evoke a duty to the world at large. Therefore, the attendant circumstances in the instant case present a situation closely analogous to the circumstances and holding in *Sandoval,* which also involved negligent supervision of the child by a parent.

---

1. In *Rourk v. State,* Arizona's most recent case involving the parental immunity doctrine and negligent supervision, this Court was asked to determine whether the doctrine applied to foster parents. 170 Ariz. 6, 821 P.2d 273 (Ct.App. 1991). We held that even though the doctrine would have applied if the lawsuit had been against the child's natural parents, it did not apply to foster parents who were not related to the foster child by blood, marriage, or adoption or who were not providing foster care in contemplation of adoption. *Id.* at 9–11, 821 P.2d at 276–78.

In *Sandoval,* we held that the closing of the gate to keep the child safe within the yard of the family residence was a duty owed by the parent to the child alone because it was a part of the "care and control" or "other care" aspect of parental responsibility. 128 Ariz. at 13, 623 P.2d at 802. We see no distinction between the parents' duty in *Sandoval* to keep their unattended young child out of the street and the parents' duty to keep their child, who is unable to swim, out of the family pool when the child is unattended. *See id.* In both cases, the duty is owed to the child alone, not to the world at large. If a child other than the child of the parent had been present and was injured in circumstances similar to either *Sandoval* or the present case, the parent might have had a duty to the other child arising out of an assumption of a duty to care for another's child, but not because a duty to the world at large existed. Based on *Sandoval,* we therefore reject the contention that the mother's duty to the child arose out of her duty to the world at large to exercise reasonable care to protect all children from injury in the pool. *See id.*

It is also argued on behalf of the child that parental immunity should not apply because his injury was not caused by the action of a third person or instrumentality, as it was in *Sandoval* and *Sandbak* where parental immunity did apply, but instead was caused by an instrumentality under the control of the mother, which was similar to *Streenz* and *Schleier* where immunity did not apply. This argument has some appeal. However, for us to determine that the mother was not immune from liability on this basis would put us at odds with the clear rationale of the Arizona cases previously discussed. The applicability or nonapplicability of parental immunity was determined on the basis of whether, by the act that caused the injury, the parent breached a duty owed to the world at large or a duty owed to a child within the family sphere. Thus, while the pool was an instrumentality in the control of the mother, the duty of supervision she breached was to the child alone. Furthermore, unlike *Schleier,* the mother could not supervise the pool in the sense that the parents could supervise their dog, and, unlike *Streenz,* the mother did

not have control over the pool as she would have over the driving of a vehicle. We conclude that this argument on behalf of the child fails because the present appeal presents a case of negligent supervision, rather than failure to control the instrumentality that caused the harm.

It is further argued on behalf of the child that Arizona should follow Wisconsin in limiting the *Goller* exceptions. In *Cole v. Sears Roebuck & Co.,* the parents of a young boy sued a neighbor and Sears for injuries the child sustained when he was struck in the eye by a metal tube extending from a glider on a swing set purchased at Sears and installed in the neighbor's yard. 177 N.W.2d 866, 867 (Wis.1970). The defendants sought contribution from the injured child's parents, alleging *inter alia* that the parents failed to supervise or provide for proper supervision of the child. *Id.* The trial court overruled the demurrer by the injured child's parents to the contribution action. *Id.*

On appeal, the parents of the injured child argued that a parent's supervision of a child playing is "entitled to immunity because it involves direct parental control and is primarily an interaction between parent and child rather than a nondomestic activity." *Id.* 177 N.W.2d at 868. The *Cole* court rejected that argument, believing that *Goller* "limited immunity to a greater degree than simply acts which are 'essentially parental' in nature." *Id.* at 869. The court emphasized the second *Goller* exception:

> To qualify for the exception to liability in this state, the act must not only be parental in nature but it must also constitute an exercise of discretion with "respect to the provision of food, clothing, housing, medical and dental services, and other care." *Goller v. White, supra.* The term "other care" is not so broad as to cover all acts intimately associated with the parent-child relationship.

*Id.* The Wisconsin court noted that parental supervision of children is essentially parental, but does not involve a legal duty as is the case with providing children with food, housing, medical and dental services, and education. *Id.* It thus concluded that "other

care" referred to such legal duties and did not warrant the imposition of immunity for parental acts that were not essentially concerned with providing a child with similar necessities. *Id.* The *Cole* court therefore held that parental immunity did not apply in that case. *Id.*

The Wisconsin court also reached the same conclusion in *Thoreson v. Milwaukee & Suburban Transport Co.,* a case involving an unattended three-year-old child who ran into the path of a bus. 56 Wis.2d 231, 201 N.W.2d 745 (1972). The *Thoreson* court narrowly construed the first *Goller* exception to the abolishment of immunity—which involves the exercise of parental authority over the child—as embracing the area of discipline. *Id.* 201 N.W.2d at 753. As to the second exception, it agreed with *Cole* that the exception does not extend to ordinary acts of upbringing, such as supervision or education about safety, that are not of the same legal nature as providing food, clothing, housing, and medical and dental services. The court concluded that "[t]he care sought in the exclusion is not the broad care one gives to a child in day-to-day affairs.... The exclusion is limited to legal obligations, and a parent who is negligent in other matters cannot claim immunity simply because he is a parent." *Id.*

Although in the present case counsel for the child correctly states that Wisconsin courts have narrowed the *Goller* exceptions to abrogation of parental immunity to legal duties of an essential nature, we decline to similarly narrow the exception in Arizona for several reasons. First, the court in *Sandbak* specifically rejected the limitations of *Thoreson,* noting that Arizona courts have not limited parental immunity to acts that parents are legally obligated to perform and instead have included the broad category of "other care" within the activities to which the parental immunity doctrine applies. *Sandbak,* 166 Ariz. at 23, 800 P.2d at 10. Second, our supreme court in *Sandoval* concluded that the parent's failure to close the gate to keep the unattended child in the yard was part of parental "care and control" or "other care" to be provided by parents and therefore found the parental immunity doctrine

applicable. 128 Ariz. at 13–14, 623 P.2d at 802–03.

## III. CONCLUSION

In summary, we conclude that the mother, under the parental immunity doctrine, is immune from liability for her negligent supervision of the child and affirm the trial court's grant of summary judgment. It should be noted that our decision is based upon our review and analysis of Arizona case law and what we perceive to be the current status of the parental immunity doctrine as expressed by our supreme court. In the event that there is to be a departure or modification of the established case law, it is for the supreme court to determine and not this Court.

GARBARINO, J., concurs.

KLEINSCHMIDT, Judge, dissenting.

I respectfully dissent. I believe that we have wide latitude in dealing with the issue of parental immunity because, in *Sandoval v. Sandoval,* 128 Ariz. 11, 14, 623 P.2d 800, 803 (1981), the supreme court said that the question whether the parent's duty was owed to the child or the world at large was a matter to be decided on a case-by-case basis.

The majority has done an especially good job of tracing the evolution of the abrogation of parental immunity. Its exegesis, however, exposes how fine are the distinctions upon which liability turns from case to case. The test of whether a duty is owed to the world at large or to the child alone, however well it may serve in some cases, is not very satisfactory in others.

There is a makeweight argument, a collateral point in the majority opinion, with which I sharply disagree. I begin my analysis with this point because it lays the ground work for my own conclusion. The child argues that parental immunity should not apply in this case because, unlike the situation present in several cases in which Arizona courts have found that immunity did apply, the instrumentality which caused the actual harm in this case was under the control of the mother. The majority rejects this argument with the observation that it misstates the test. The test is to whom did the mother owe the

duty? The majority does not rest with that observation, however, but goes on to bolster its conclusion with the following statement:

> Furthermore, unlike *Schleier v. Alter*, 159 Ariz. 397, 767 P.2d 1187 (App.1989), the mother could not supervise the pool in the sense that the parents could supervise their dog, and unlike *Streenz v. Streenz*, 106 Ariz. 86, 471 P.2d 282 (1970), the mother did not have control over the pool as she would have over the driving of a vehicle.

To my mind, this statement is not correct. The mother in our case could have supervised the contact between her child and the pool as easily as the parents in *Schleier* could have supervised contact between their child and their dog. Similarly, she could have supervised the contact between her child and the pool as easily as the mother in *Streenz* could have driven carefully.

These same two cases, *Streenz* and *Schleier*, support the conclusion that the mother's duty in our case was owed to the world at large. The supreme court, in *Sandoval*, 128 Ariz. at 13, 623 P.2d at 802, stated that the mother in *Streenz* was liable for her child's injuries because the mother owed a duty to the world to drive carefully. And yet, the accident that gave rise to liability, a crash into a tree, did not endanger anyone other than the child who was a passenger in the car. *See Streenz*, 106 Ariz. at 86, 471 P.2d at 282. Thus, it was the potential for harm to the world of motorists and pedestrians at large, whether anyone in that world at large was harmed or not, that justified dispensing with parental immunity. So too, in *Schleier*, it was the danger that an uncontrolled dog might bite anyone, even if it only actually bit the owner's child, that justified the imposition of liability. *See Schleier*, 159 Ariz. at 399–401, 767 P.2d at 1189–91. Why is this case any different than *Streenz* or *Schleier*? The mother owed a duty to the world to supervise this swimming pool. What difference does it make that her negligence on this occasion resulted in harm only to her own child? Parental immunity ought not apply.

I see no policy reason which runs counter to my conclusion. To allow this suit against the mother is no more disruptive to family unity than it is disruptive to family unity to allow a child to recover for injuries received in an automobile accident. Nor would allowing the suit involve the courts in weighing the merits of parental decisions about how children should be raised, supervised, and supported. Nothing in this mother's actions involved an exercise of judgment which society has the slightest interest in honoring. No one could argue that the mother was in any way justified in allowing a two-and-half-year old to play by himself by a swimming pool. A finder of fact could thus conclude that the mother's conduct was an act of gross negligence which would not merit the protection of immunity. *See Foldi v. Jeffries*, 93 N.J. 533, 461 A.2d 1145 (1983) (immunity for simple negligent supervision but not for supervision that amounts to willful or wanton negligence); *Jenkins v. Snohomish County Public Utility Dist.*, 105 Wash.2d 99, 713 P.2d 79 (1986) (no immunity for conduct which a reasonable person knew or should have known is highly dangerous); *see also* Jefferson L. Lankford & Douglas A. Blaze, The Law of Negligence in Arizona, § 3.4(2) at 39–40 (1992) (discussing relationship between gross negligence and immunity).

I would reverse the order granting summary judgment and remand this case for trial.