[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT MOTHER'S MOTION TO STRIKE
In this case, the plaintiff father and his son P. allege that on May 29, 1999, the minor defendants were in their yard at a home in New London. The premises are alleged to have been owned by the mother, the defendant Wilson. The complaint further states that on the date mentioned, the minor defendant S. was in possession of a can of gasoline and matches and proceeded to pour the gasoline on and near the minor plaintiff P. and the minor S. then lit the match which caused the gasoline to ignite engulfing the minor plaintiff P. in flames and causing him serious injury. An eight count complaint has resulted with several counts directed against the minor defendant S.
The motion to strike is directed against those counts in the complaint directed against the defendant mother. Those counts are the third count based on negligence, the fourth count wherein the father seeks reimbursement for medical expenses, the seventh count based on a claim under § 52-572 of the Connecticut General Statutes alleging willful and wanton acts by S., an unemancipated minor, which led to the plaintiff being injured and an eighth count for medical expenses by the father which is derivative of the seventh count.
The defendants have moved to strike the third, fourth, seventh and eighth counts on the basis that they are barred by the doctrine of parental immunity and also argue that claims brought pursuant to §52-572 of the Connecticut General Statutes "are legally insufficient in that recovery pursuant to this statute is limited to claims brought by third parties."
The standards to be applied on a motion to strike are well-known. The facts set forth in the pleading which is the object of the motion must be accepted as true and every reasonable inference must be given to the language of the complaint. Amodio v. Cunningham, 182 Conn. 80 (1980). CT Page 5390
 I
The doctrine of parental immunity is accepted as the law in our state by the Appellate Courts. Crotta v. Home Depot, Inc., 249 Conn. 634
(1999); Asciutto v. Farracelli, 244 Conn. 692 (1998); Squeglia v.Squeglia, 234 Conn. 259 (1995); Dubay v. Irish, 207 Conn. 518 (1988);Dzenutis v. Dzenutis, 200 Conn. 290 (1986); also see discussion and cases from other states in 6 ALR 4th 1066, "Parents' Liability — Injury to Child." In 1986, the Dzenutis court said that "A growing number of states have now abrogated the doctrine in whole or in part either by statute or judicial decision." 200 Conn. at page 295; see ALR article at § 13 and cases to that section in 2001 Supplement. Connecticut has explicitly not joined that growing trend but has recognized certain exceptions to the rule which are set forth in Squeglia v. Squeglia at the Appellate Court level. See 34 Conn. App. 866, 809. There, the court said:
 "Connecticut law recognizes only four exceptions to the parental immunity doctrine. First, an unemancipated minor can sue the employer of a parent whose negligence in the course of employment injured the child, thereby putting the parent at risk of an indemnity suit. Chase v. New Haven Waste Material Corp., 111 Conn. 377, 380 (1930). Second, a minor can sue a parent if the child was emancipated prior to the tortious conduct. See Wood v. Wood, 135 Conn. 280, 283
(1948). Third, an unemancipated minor can sue a parent for injuries received through the negligent conduct of a business enterprise conducted away from the home. Dzenutis v. Dzenutis, 200 Conn. 290, 300 (1986). Fourth, an unemancipated minor can sue a parent for injuries resulting from the negligent operation of a motor vehicle, aircraft or waterborne vessel. General Statutes § 52-572c."
Also, as the plaintiffs point out another exception was recognized inHenderson v. Wooley, 230 Conn. 472, 486 (1994) which held "the doctrine does not bar a suit by a child for sexual abuse, sexual assault or sexual exploitation by a parent."
The business enterprise exception recognized in Dzenutis and the sexual assault exception referred to in Henderson seem to be, as those courts indicate at least in part subsets of a more generally recognized exception noted in the case law, the so-called "public duty" exception. Thus, Dzenutis, after discussing the reliance of the availability of insurance to the issue before it said: "Another consideration has been CT Page 5391 the incongruity of denying recovery because of a familiar relationship between the victim and the tortfeasor for injuries caused by the breach of a duty owed to the general public upon which the relationship has no bearing." 200 Conn. 297. In Henderson, the court said: "Furthermore, there is a point at which parental conduct properly becomes a matter of public concern, and sexual abuse, assault and exploitation are well within that realm. When a parent perpetrates such a crime upon his or her child, that act constitutes a breach of duty owed not only to the child, but to the public at large, and there is no reason to immunize such conduct from a civil action in damages merely because of the familial relationship." 230 Conn. 482-83. Also, Dzenutis cited an Illinois caseCummings v. Jackson, 372 N.E.2d 1127 (Ill., 1978) to support its position which is referred to in fact in the ALR article as an example of a case where "the doctrine of parental tort immunity was not (held) applicable where the parent's negligence which caused or resulted in the child's injuries, involved a breach of duty owed primarily to the general public and only incidentally to the child." See § 8 at 6 ALR 4th pp. 1102-1103 (and 2001 Supplement) referring to cases of this type.
In any event, despite the foregoing exceptions our Appellate Courts are not willing to abandon the doctrine for fear of the family discord that would be caused and particularly support the viability of the immunity in one area; thus the court in Henderson said: "This court has indicated its reluctance to abandon parental immunity in regard to the performance of acts involving parental care, supervision and discretion." 230 Conn. 480.
How does this all relate to the issue before the court? It would seem directly, since the allegations of the various counts of the complaint against the mother all base their claims on allegations or negligent care and supervision or through their demand for medical expense reimbursement are derivative of such claims.
The only resistance to the motion to strike except for one argument which will be discussed later is based on a request that the court not follow Appellate Court precedent but either abrogate the doctrine entirely or perhaps amend it to provide immunity under a test which as regards parental care and supervision would say that the doctrine would operate only if it could be shown, as regards such care and supervision that the parent acted as a reasonably prudent parent would have done under the circumstances. Gibson v. Gibson, 92 Cal.Rptr. 288 (1971) is cited for this proposition. Not only would the Gibson rule not mitigate the danger of family discord in these situations, which is a major articulated reason for the doctrine in this state, see Asciutto v.Farricelli, supra, 234 Conn. 697-98, but it would interject the court into family affairs as some overarching nanny. CT Page 5392
In any event, this is not Connecticut law and this is a trial court bound to follow Appellate case law. In effect, the plaintiffs ask the court to not follow that law. At page 20 of their brief, the plaintiffs forthrightly and rather refreshingly say:
 "The instant matter essentially involves parental liability for the tortious conduct of one unemancipated child towards an unemancipated sibling, in addition to an unemancipated child's claim against the parent for negligent supervision. The facts of this case cannot be tortured such that it can be construed as falling within one of the recognized exceptions. In particular, the alleged negligent action of the tortfeasor parent does not involve the negligent operation of a motor vehicle, aircraft or boat; nor did the negligent conduct take place at the parent's business place; nor did the negligent conduct involve an intentionally willful act such as sexual abuse.
 In this case, the negligent conduct of the tortfeasor parent falls within the last bastion of protected negligent parental conduct, to wit, negligent supervision and/or discipline. So the issue is, whether the court wishes to create another exception to the rule doctrine of parental immunity, to wit, the exception that the court in Dubay v. Irish, refused to address."
As a lower court, this invitation to create an "exception" that would do away with the parental immunity doctrine cannot be accepted. The plaintiffs well-crafted brief is really directed toward our Appellate Courts.
The plaintiffs do, however, seem to raise one argument that arguably falls within the socalled "public duty" exception to the parental immunity doctrine. Jurisdictions accepting the doctrine seem to apply it and as noted the Dzenutis and Henderson cases when recognizing their exceptions to the general rule in part relied on the "public duty" notion. Can it be said to apply here? The plaintiffs argue at pp. 27 and 28 of their brief that if the allegations of the complaint are viewed "in the light most favorable to plaintiff' (the appropriate test on this motion) then "a public duty was involved." The plaintiffs go on to argue that: "The reasons the dangers of fire are public is that the public can be harmed by the fire without going on the premises of the origin of the fire. A fire which originates in a single apartment of an apartment CT Page 5393 complex can readily spread to adjoining apartments thereby putting the general public at risk."
An examination of the public duty exception, however, indicates that it cannot operate here to curtail the immunity otherwise available to the defendant mother for her alleged negligent supervision of the children.
It is not negligent to have gasoline stored or otherwise kept on property or indeed other substances that might be flammable. People store gasoline for lawn mowers in their garages or in tool sheds, the same is true for example, of propane gas used for outdoor cooking purposes. There is no claim the gasoline was subject to spontaneous combustion. Perhaps more to the point, there is no claim that where or the way in which the gasoline was kept on the property presented a danger to the public. The injury caused here was allegedly due to the negligent supervision of how the child made use of the gasoline. If the plaintiffs' argument is accepted, the parent immunity doctrine would not apply whenever a child who is not properly supervised, is injured by a tool, play object such as a baseball bat or hockey stick, etc., wielded by a sibling on the theory that such an item, if used improperly or with aggressive intention, could cause harm to a member of the general public. An examination of the so-called public duty cases underlines the point that the factual circumstances presented here do not provide the basis for an exception to the general grant of parental immunity.
In Dzenutis, for example, the court held the doctrine should not apply to immunize the father from suit where injury is caused to the child as a result of a negligent act occurring in the course of a business the court as indicated more generally referred to a public duty concept as supporting its position. But in Dzenutis, the breach of duty to the public in general — which also caused the child injury — was obvious and did not present a risk just to the child. The court said: "The plaintiff, Thomas Dzenutis, the fifteen year old son of the defendant, was severely burned when he tripped over a bucket of hot tar that his father had left unguarded upon the sidewalk adjacent to the building upon which he was working. The mishap might well have occurred to any other member of the public who passed that way." 200 Conn. at page 300. Dzenutis cites the Illinois case of Cummings v. Jackson, supra. In that case, a child was injured and sued her mother. Parental immunity was held not to bar the suit where the child was hit by an automobile whose driver could not see the child because, in violation of a city ordinance, the mother failed to trim trees on her property which obstructed the driver's view of the child. The court said: "In the instant case the duty alleged to have been breached by the mother concerned the maintenance of trees on the area immediately adjacent to the home. The duty was owed primarily to the general public, however, not CT Page 5394 to the members of the family living in the house." 372 N.E.2d p. 1128. The case of Schleier v. Alter, 767 P.2d 1187 (Ariz., 1989), is interesting in this regard. In that case, a child was allowed to sue her parents when she was bitten by the family dog which was apparently vicious and known to be a danger to children. The court reasoned that the duty to supervise the child may have been limited to the family sphere but the duty to supervise this inherently dangerous dog was owed to the world at large thus parental immunity did not apply. Id., 1190. In a later Arizona case, the court analyzed Schleier and said its reasoning did not apply to abrogate parental immunity in the case before it. Broadbent v.Broadbent, 870 P.2d 1149 (Ariz., 1993) was brought by a child against his mother when he nearly drowned in the family pool. The court held the public duty exception to parental immunity did not apply. The plaintiff child argued on appeal that the mother's duty to him arose out of her duty as a property owner. She had a non-parental duty to exercise reasonable case to protect all children from the danger posed by the pool. The court rejected this argument saying: "A pool is like many other things that could be dangerous to a child, such as a hot stove burner, a cigarette lighter or even a paint thinner. The situation where a parent allows a child to be unattended around items that could be dangerous falls into the category of negligent parental supervision, which does not evoke a duty to the world at large." Id., 870 P.2d 1152. The factual allegations in this complaint, based on the reasoning of Dzenutis and cases from other jurisdictions does not permit the public duty exception to the doctrine to apply; the court would refer to its earlier analysis of those facts. The third and fourth count are stricken.
The seventh count and its derivative count are also stricken. In the seventh count, the plaintiff minor seeks damages pursuant to § 52-572
of the Connecticut General Statutes.
 Sec. 52-572. Parental liability for torts of minors. (a) The parent or parents or guardian. . ., have to indicate and left something of any unemancipated minor or minors, which minor or minors wilfully or maliciously cause damage to any property or injury to any person, shall be jointly and severally liable with the minor or minors for the damage or injury to an amount not exceeding five thousand dollars, if the minor or minors would have been liable for the damage or injury if they had been adults.
The mother, by the allegations of the seventh count is not being accused of willful or malicious behavior. Viewing the factual allegations of the third count, paragraph 11, which are part of the pleadings, it is obvious that the theory of the case is that the defendant children were CT Page 5395 only able to engage in the wilful and malicious acts causing injury to plaintiffs child P. because of the mother's alleged careless and negligent supervision of the defendant S. To enforce the policy considerations behind the doctrine of parental immunity the seventh count and its derivative count must be stricken. It would make no sense to say a child cannot sue his or her mother because of her negligent care and supervision but if she has two children and she was negligent in supervising a child which permits that child to wilfully injure another one of her children, the injured child in that scenario could sue the mother. The point is the same allegation of negligent supervision leads to injury and the parental immunity doctrine says the courts, for the policy reasons indicated, should not second guess that supervision, as long as it lies in negligence, and allow the child to sue the parent with all the harmful consequences that are envisaged.
The motion to strike is granted as to the third, fourth, seventh and eighth counts.
Corradino, J.